*650 A.2d 819*

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. G.S.,[1] DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 13, 1994—Decided December 13, 1994.

---

[1] Because this case involves an alleged sexual assault upon defendant's minor child, the defendant and all minor children are identified only by their initials.

156

Before Judges SHEBELL, WALLACE and KLEINER.

*Susan L. Reisner,* Public Defender, attorney for defendant-appellant (*Helen E. Szabo,* Designated Counsel, of counsel and on the brief; *Ellen Shiever,* Assistant Deputy Public Defender, on the supplemental letter brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for plaintiff-respondent (*Nancy A. Hulett,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Tried to a jury, defendant G.S. was convicted of second-degree sexual assault, contrary to *N.J.S.A.* 2C:14–2b (count one), third-degree aggravated sexual contact, contrary to *N.J.S.A.* 2C:14–3a (count two), first-degree aggravated sexual assault, contrary to *N.J.S.A.* 2C:14–2a (count three), second-degree endangering the welfare of a child, L.K., contrary to *N.J.S.A.* 2C:24–4a (count four) and second-degree endangering the welfare of a child, M.K., contrary to *N.J.S.A.* 2C:24–4a (count five).

Defendant was sentenced to the Adult Diagnostic and Treatment Center at Avenel for an aggregate term of twenty-three years with a ten-year period of parole ineligibility as follows: a seven-year term on count one; a five-year term on count two, to be served concurrently with the sentence on count one, but subject to a two-year period of parole ineligibility; a sixteen-year term on

count three to be served consecutive to the sentences imposed on counts one and two and subject to an eight-year period of parole ineligibility; and a sentence of four years on counts four and five, with each sentence to be served concurrent with the sentences imposed on counts one, two and three. Defendant was also ordered to pay a Violent Crimes Compensation Board penalty of $1,590.

On appeal, defendant raises eight points of error as follows:

*POINT I*

THE TRIAL COURT'S EXCLUSION OF EVIDENCE OF THE VICTIM'S PRIOR SEXUAL CONDUCT, WHICH WOULD HAVE DEMONSTRATED HER PRIOR SEXUAL KNOWLEDGE, AS WELL AS HER BIAS AND MOTIVE TO FABRICATE THE CHARGES, VIOLATED DEFENDANT'S RIGHT OF CONFRONTATION UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

*POINT II*

THE PROSECUTOR'S COMMENTS DURING SUMMATION PREJUDICED DEFENDANT'S RIGHT TO A FAIR TRIAL (PARTIALLY RAISED BELOW).

*POINT III*

THE TRIAL COURT ERRED IN ADMITTING THE EVIDENCE OF PRIOR ALLEGED SEXUAL ACTIVITY BETWEEN DEFENDANT AND THE VICTIM.

*POINT IV*

THE TRIAL COURT'S LIMITING INSTRUCTIONS CONCERNING THE ALLEGATIONS OF PRIOR SEXUAL ACTIVITY BY DEFENDANT AND THE VICTIM WERE INADEQUATE (NOT RAISED BELOW).

*POINT V*

THE LOWER COURT IMPROPERLY DENIED DEFENDANT'S MOTION FOR A PSYCHIATRIC OR PSYCHOLOGICAL EXAMINATION OF THE VICTIM, WHO HAD BEEN DIAGNOSED AS SUFFERING FROM FANTASY GRATIFICATION/REALITY AVOIDANCE AND VARIOUS OTHER DISORDERS, HAD ATTEMPTED SUICIDE AND HAD PREVIOUSLY UNDERGONE EXTENSIVE PSYCHIATRIC TREATMENT/COUNSELING.

*POINT VI*

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL (NOT RAISED BELOW).

*POINT VII*

DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL (PARTIALLY RAISED BELOW).

*POINT VIII*
THE TRIAL COURT'S SENTENCE TO CONSECUTIVE TERMS OF IMPRISONMENT CUMULATING 23 YEARS WITH A 10 YEAR PERIOD OF PAROLE INELIGIBILITY AND TO ENHANCED VCCB PENALTIES OF $1500 WAS NOT IN ACCORDANCE WITH THE SENTENCING GUIDELINES OF THE CODE.

The indictment charged G.S. with sexual crimes committed upon his stepdaughter, L.K., commencing in the spring of 1984 when L.K. was twelve years old and in the sixth grade and continuing on a regular basis until February 1987. Count five of the indictment charged defendant with endangering the welfare of his stepson, M.K., related to one event, discussed more fully hereafter, when M.K. was nine or ten years old. All of the events referenced within the indictment occurred in Sussex County, where defendant resided with his wife (now deceased), two children born of their marriage, and his stepchildren, L.K. and M.K.

We need not recount the exact details of the alleged sexual activity. L.K.'s graphic testimony at trial detailed sexual activity which progressed from fondling to include sexual intercourse, cunnilingus, masturbation and sexual perversion. Count five of the indictment encompassed one incident in which G.S. allegedly required L.K. to disrobe and permit M.K. to fondle her breasts and vagina as a method of sex education under G.S.'s guidance.

After careful and deliberate review, we conclude that G.S.'s conviction should be reversed and the matter remanded for a new trial. The trial court's admission of evidence of prior sexual conduct between G.S. and L.K. was improper without a more tailored limiting instruction to the jury pursuant to Rule 6 of the *New Jersey Rules of Evidence* (now *R. 105*).

Our focus in the first section of this opinion concerns those allegations of error raised by defendant as Points III and IV. The second section of this opinion focuses on allegations of error asserted in Point I. We will then consider defendant's claim of prosecutorial misconduct.

I

In 1982, when L.K. was eleven years old, the family unit resided in Monmouth County. After viewing an educational film in school

dealing with "bad touching" and "good touching," L.K. informed her mother that she did not want G.S. to bathe her any longer because G.S. had touched her genital area. She also indicated that G.S. would make her lie on her bed naked and would stare at her body. L.K. also indicated that she feared that G.S. would spank her with his hands, a ruler or a hairbrush as punishment for receiving a poor grade in school.

As a result of those allegations, the Division of Youth and Family Services (D.Y.F.S.) became involved with the family. L.K. was placed in the home of an aunt for approximately six months and in foster care thereafter. L.K.'s mother did not believe L.K.'s accusations, and she remained supportive of her husband. While L.K. was in foster care in 1983, G.S. was charged with endangering the welfare of a child, contrary to *N.J.S.A.* 2C:24–4a. He applied for and was accepted to the Pretrial Intervention Program. While in foster care, L.K. recanted her original allegations concerning her stepfather, and D.Y.F.S. returned her to the home of her mother and stepfather.

Soon thereafter, the family moved to Sussex County. Approximately six months after this relocation, G.S. allegedly began to fondle L.K., and his sexual acts escalated in intensity and frequency. By February 4, 1987, G.S. was allegedly engaging in sexual relations with L.K. approximately three times each week. As a result of a revelation of these sexual acts on February 4, 1987, defendant was charged criminally and thereafter indicted.

At the ensuing trial, the State sought to present evidence of the sexual activity in Monmouth County, L.K.'s accusations and subsequent recantation, and the admission of G.S. into Pretrial Intervention. The State contended that the Monmouth County allegations were admissible to establish defendant's intent and to explain why L.K. never confided in her mother once defendant began to sexually abuse her. The trial court concluded that the evidence of the prior acts was admissible under *Evidence Rule* 55 to demonstrate defendant's motive or intent.

*Evidence Rule* 55 specifically provides:

> Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.[2]
>
> [*Evid. R.* 55.]

We reject defendant's contention that the admission of other-crimes evidence here was error. *Evidence Rule* 55 prohibits the introduction of other crimes or civil wrongs to prove a defendant's criminal disposition as a basis for establishing guilt of the crime charged. "The Rule expressly permits such evidence to be admitted to prove other facts in issue, such as 'motive, intent, plan, knowledge, identity or absence of mistake or accident....'" *State v. Stevens*, 115 *N.J.* 289, 293, 558 *A.2d* 833 (1989) (citations omitted).

■ In *State v. Cofield*, 127 *N.J.* 328, 605 *A.2d* 230 (1992), the Supreme Court established a general rule for the admissibility of other-crimes evidence in order to avoid the overuse of extrinsic evidence of other crimes. The evidence must be: first, "admissible as relevant to a material issue"; second, "similar in kind and reasonably close in time to the offense charged"; third, "clear and convincing"; and finally, "the probative value of the evidence must not be outweighed by its apparent prejudice." *Id.* at 338, 605 *A.2d* 230 (citation omitted).

■ Here, the evidence of the Monmouth County allegations satisfies the rule in *Cofield*. First, because the Monmouth County

---

[2] Since revision of the *Rules of Evidence, Rule* 55 is known as *Rule* 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
>
> [*N.J.R.E.* 404(b).]

charges involved fondling and disrobing on command, they were directly relevant to the issue of motive to defendant's Sussex County charges for fondling and disrobing on command. Second, the Monmouth County allegations were similar in kind and reasonably close in time. The prior allegations occurred within one year of the commencement of the Sussex County events. L.K. testified that G.S. would order her to undress and prepare dinner while naked, would often require her to shower with him, and would also order her to remove her blouse to permit him to measure her breasts. The activities in both counties constitute violations of *N.J.S.A.* 2C:14-2b. Third, although the charges were eventually withdrawn, they were convincing enough to institute a charge against G.S. for endangering the welfare of a child, contrary to *N.J.S.A.* 2C:24-4a. Finally, the trial court found that the probative value of the prior allegations outweighed any apparent prejudice. Defendant did not request a *Rule 8* hearing to test the truthfulness of the Monmouth County allegations. *State v. Elmore*, 205 *N.J.Super.* 373, 384, 500 *A.2d* 1089 (App.Div.1985); *State v. Wilson*, 158 *N.J.Super.* 1, 10–11, 385 *A.2d* 304 (App.Div. 1978), *certif. denied*, 79 *N.J.* 473, 401 *A.2d* 229 (1978). Defendant only argued that the probative value of the evidence was outweighed by its prejudicial nature. *State v. Frost*, 242 *N.J.Super.* 601, 619–21, 577 *A.2d* 1282 (App.Div.) *certif. denied*, 127 *N.J.* 321, 604 *A.2d* 596 (1990). *See also State v. Bowens*, 219 *N.J.Super.* 290, 296–97, 530 *A.2d* 338 (App.Div.1987) (noting that although most damaging evidence is prejudicial, admissibility turns on whether the risk of *undue* prejudice is too high).

In this case, the prejudicial nature of the Monmouth County allegations was dissipated, in part, by admission of evidence of L.K.'s recantation and by the exclusion of any reference to defendant's admission to pretrial intervention. The Monmouth County allegations also had probative value to explain why L.K. never confided in her mother after G.S. renewed his sexual activities. The fact that her mother disbelieved L.K.'s original allegations and remained supportive of G.S., and the fact that she was

removed from the family home while her stepfather continued to reside there were relevant to explain L.K.'s silence regarding her abuse by G.S. in Sussex County.

■ Moreover, the list of issues within *Evidence Rule* 55 for which other crimes may be admissible is not intended to be exclusive. *Stevens, supra,* 115 *N.J.* at 300, 558 *A.*2d 833. In *Frost, supra,* 242 *N.J.Super.* at 619–21, 577 *A.*2d 1282, evidence of defendant's prior assaultive behavior was admissible to establish that the victim was suffering from battered woman's syndrome. *Id.* The proffered evidence was material to the victim's state of mind and was properly admitted.

The use of other-crimes evidence for a purpose not specifically delineated in *Evidence Rule* 55 is perhaps best illustrated in *State v. Oliver,* 133 *N.J.* 141, 627 *A.*2d 144 (1993). In *Oliver,* the defendant was on trial for sexually assaulting two women. The State sought to introduce evidence that he had previously assaulted three other women, and offered the testimony of two of these women as other-crimes evidence. *Id.* at 148, 627 *A.*2d 144. Each of the women had been lured to defendant's home ostensibly for a very benign purpose while other individuals were present at the premises. *Id.* The Supreme Court determined that the other-crimes evidence was admissible to prove "only the feasibility of the crimes and defendant's use of pretext in luring" the victims to his home. 133 *N.J.* at 156, 627 *A.*2d 144.

■ However, the admissibility of other-crimes evidence is tempered by the admonition that the court must, pursuant to *Evidence Rule* 6 (now *N.J.R.E.* 105), provide the jury with explicit limiting instructions. These instructions must "state specifically the purposes for which the evidence may be considered and, to the extent necessary for the jury's understanding, the issues on which such evidence is not to be considered." *Stevens, supra,* 115 *N.J.* at 309, 558 *A.*2d 833. A mere recitation of the generalities of the rule is insufficient. *Cofield, supra,* 127 *N.J.* at 341–42, 605 *A.*2d 230. The court must narrowly focus the jury's attention on the specific use of the other-crime evidence as illustrative of a proper

charge. *Oliver, supra,* 133 *N.J.* at 158, 627 *A.*2d 144 (citing *State v. Cusick,* 219 *N.J.Super.* 452, 466, 530 *A.*2d 806 (App.Div.1987).

In this instant matter, the trial court's limiting instructions failed to comport with the specificity required. This is particularly evident when compared with the charge given in *Cusick, supra,* 219 *N.J.Super.* at 466–67, 530 *A.*2d 806. Immediately following a portion of L.K.'s testimony regarding the Monmouth County allegations, the court gave the following instruction:

> Members of the jury, under our Rules of Evidence in the State of New Jersey, where evidence is presented that an individual committed a—crime or a civil wrong on a specified occasion, it is inadmissible to prove an individual's disposition to commit a crime or civil wrong as the basis for an inference that the individual committed a crime or civil wrong on another specified occasion.
>
> However, such evidence is admissible to prove another fact in issue. And, another fact in issue includes a motive, an intent, a plan, a knowledge, entity [sic], or absence of mistake or accident. And so this evidence, which the State seeks to elicit from [L.K.], the Court permits you to hear this evidence with regard to these Monmouth County—this Monmouth County matter on that basis. On the basis of the—going to issues of notice, intent, plan, knowledge, entity [sic] or absence of mistake or accident. But not to draw any inference that because a crime or civil wrong may have been committed on one occasion, as the basis for inference to commit a crime or civil wrong on another occasion.

At another point in L.K.'s testimony, the judge again advised the jury:

> If you recall the other afternoon, one of the last questions [the prosecutor] was asking [L.K.] was about whatever conversations she had with her mother. I wish to go over that with you at this time before [the prosecutor] continues to question his client. And to again give you some instruction with regard to this potential testimony by the witness.
>
> As I indicated to you the other day, under our Rules of Evidence, in the State of New Jersey, the rule indicates that there is evidence that a person committed a crime or a civil wrong on [a] specified occasion, that is inadmissible to prove that a person has a disposition to commit a crime or civil wrong as a basis for drawing an inference the person committed a crime or civil wrong on another specified occasion. But, the rule does permit such evidence to be admitted to prove some other fact that may be in issue. Fact—a fact that would involve, for instance, questions of motive, intent, plan, knowledge, identity, or absence of mistake or accident. Those types of issues.
>
> Now, if there is evidence by this witness in which the witness makes allegations of conduct that may be criminal, then what I want you to understand is that the testimony by the witness is making—is testimony that is making allegations. There is no proof before you. And, indeed, there is, and I can represent to you as

a matter of fact, that the defendant has never been proven guilty; nor, has he ever entered a plea of guilty with regard to any such allegations that may be made by this witness with regard to any conduct that occurred while the family was residing in Monmouth County.

But you are the fact finders, as I previously instructed you. And you have the right to judge, to assess rather, the credibility of each and every witness who appears during this trial to determine believability. And, you should understand then how you are to view this type of evidence that may be presented at this time. Not to indicate a disposition on the part of the defendant to commit a crime on another specified occasion, but to go to such issues of motive, intent, plan, knowledge, entity [sic], absence of mistake or accident. And, to remember that this testimony may center around allegations that this witness is making with regard to the defendant. And, you have the ultimate responsibility to make ultimate judgments here.

Finally, at the conclusion of the case, the judge instructed the jury:

There was testimony presented to you, I believe, by [L.K.], during the course of her testimony, with regard to allegations that she had made against [defendant] when the family was residing in Monmouth County. The evidence that she presented through her testimony, let me go over the instruction again with regard to your treatment of that evidence.

First of all, let me indicate to you that evidence or allegations by a witness that a defendant committed—or allegations of criminal wrong doing by another person is inadmissible to prove a disposition of an individual to commit a crime as the basis for an inference that that individual committed a crime on another specified occasion. However, such allegations can be admitted to prove some other fact in issue; such as, motive, intent, plan, knowledge, entity [sic], or absence of mistake or accident, on the part of the person who it's alleged engaged in this activity.

So, with regard to this Monmouth County situation, let me—and the testimony that was presented there, that is how you should treat this particular evidence. You also, of course, again, have the obligation to assess the credibility of [L.K.] in presenting this evidence concerning these allegations when the family resided in Monmouth County.

Although the judge on three separate occasions offered instructions regarding the Monmouth County incident, not once did he relate the laundry list of abstract issues enumerated in *Evidence Rule* 55 to specific facts of the case. He neglected to tell the jury which of the issues were relevant for their consideration and particularly failed to explain that the evidence was specifically admitted to explain why L.K. never confided in her mother or others that defendant was sexually assaulting her. ·Since the court deemed the evidence admissible to prove intent or motive, it

should also have instructed the jury that the testimony regarding defendant's conduct in Monmouth County was relevant to demonstrate the allegation that defendant had L.K. undress before him for his own sexual gratification, which is an element of the charged offense, *N.J.S.A.* 2C:24–4a. Without relating the evidence to the offense, the jury was free to consider the Monmouth County evidence as proof of culpability in the Sussex County trial. The jury could conclude that because defendant had previously sexually abused L.K., he must have continued to do so.

Failure to provide a proper limiting charge was error; it is fundamental that "[a]ppropriate and proper charges to a jury are essential for a fair trial." *State v. Green*, 86 *N.J.* 281, 287, 430 *A.*2d 914 (1981). Jury charges "must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them...." *Jurman v. Samuel Braen, Inc.*, 47 *N.J.* 586, 591–92, 222 *A.*2d 78 (1966) (citation omitted); *Navarro v. George Koch & Sons, Inc.*, 211 *N.J.Super.* 558, 570, 512 *A.*2d 507 (App.Div.), *certif. denied*, 107 *N.J.* 48, 526 *A.*2d 138 (1986).

Furthermore, an erroneous charge will rarely stand on the ground that it was harmless error. *State v. Weeks*, 107 *N.J.* 396, 410, 526 *A.*2d 1077 (1987); *State v. Whitted*, 232 *N.J.Super.* 384, 391, 557 *A.*2d 327 (App.Div.1989) ("[E]rroneous instructions in matters or issues which are material to the jury's deliberation are presumed to be reversible error."). Although reviewing courts are ordinarily reluctant to reverse on the grounds of plain error when no objection to the charge has been made, it has been "repeatedly emphasized that incorrect instructions of law are poor candidates for rehabilitation under the harmless error theory." *Weeks, supra*, 107 *N.J.* at 410, 526 *A.*2d 1077 (citations omitted); *Whitted, supra*, 232 *N.J.Super.* at 391, 557 *A.*2d 327. We recently espoused the view that "appellate resolution of a challenge to a jury charge in a criminal case cannot turn on the absence of defense counsel's objection to the charge, where an essential

element of the offense charged was omitted in the jury instructions." *Ibid.* Ultimately "it is a question of whether or not the jury was confused or misled." *Navarro, supra,* 211 *N.J.Super.* at 571, 512 *A.2d* 507 (citations omitted). These principles are also applicable to a failure to properly explain the limited purpose of other-crimes evidence. Application of these well settled principles compels the conclusion that defendant's conviction must be reversed and the matter remanded for a new trial. We note that this result is mandated by *State v. Oliver* where the Supreme Court concluded in affirming the Appellate Division reversal of defendant's conviction:

> By contrast, the trial court in this case did not explain the relationship between the other-crime evidence and the issues and facts on which it could be considered. Although the court did clearly instruct the jury that it was not to use the evidence to determine that defendant was a bad person or that he had been disposed to commit the crimes charged in the indictment, it did not clearly instruct the jury on how it could use the other-crime evidence. Precisely that situation prompted this Court to find reversible error in *Cofield*.
>
> Although the instruction given in this case may not be as plainly erroneous as the one in *Cofield*, which instructed the jury to consider the other-crime evidence on "some other fact in issue," the trial court's instruction here is no more informative. It recites the bases—"intent or plan"—on which the evidence had been admitted, but unlike the *Cusick* instruction it fails to relate those abstract issues to the facts. This Court has stated that "'more is required to sustain a ruling admitting such evidence than the incantation of the illustrative exceptions contained in the Rule.'" *Cofield, supra,* 127 *N.J.* at 341, 605 *A.2d* 230 (quoting *Stevens, supra,* 115 *N.J.* at 305, 558 *A.2d* 833).
>
> [*State v. Oliver, supra,* 133 *N.J.* at 158–89, 627 *A.2d* 144.]

## II

We next must consider the conflict of the rape victim's right to privacy with the accused's right to confront his accuser. The defendant did not testify at trial. The thrust of his defense was to demonstrate through L.K.'s cross-examination that her accusations were fabricated and motivated by her bias against her stepfather, emanating from his strict discipline imposed upon L.K., which interfered with her social life, particularly as it concerned her relationship with a teenage boyfriend identified as K.K. Defendant hoped to establish that L.K. and K.K. were

sexually intimate and that L.K.'s knowledge of sexual acts was based upon knowledge gained by participation in sexual acts with K.K. Defendant's theory was that L.K. accused him falsely as a mechanism to remove him from the family home, thus enabling L.K. to maintain her relationship with K.K.

In an *Evidence Rule* 8 proceeding, defendant proffered that M.K. would recant the testimony he had previously provided to the grand jury, which was the basis of count five of the indictment. Defendant indicated that L.K. had actually invented the facts which M.K. had related to the grand jury. Defense counsel indicated that L.K. had initiated various sexual acts with M.K., and thereafter, threatened that unless M.K. gave false testimony to the grand jury, she would inform their mother of M.K.'s participation in these sexual episodes. Fearing that L.K. would in fact make this disclosure to his mother, M.K. agreed, in an effort to guarantee his sister's silence, to testify falsely before the grand jury.

The court, aware of the dictates of *N.J.S.A.* 2C:14–7a, commonly known as the "Rape Shield" statute, conducted an *Evidence Rule* 8 (now *N.J.R.E.* 104) hearing, at which both K.K. and M.K. testified.

 *N.J.S.A.* 2C:14–7 provides in relevant part:

 a. In prosecutions for aggravated sexual assault, sexual assault, aggravated criminal sexual contact, criminal sexual contact, or endangering the welfare of a child in violation of *N.J.S.* 2C:24–4, evidence of the victim's previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this section. . . . . If the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and that the probative value of the evidence proffered is not outweighed by its collateral nature or by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions which shall be permitted, and the reasons why the court finds that such evidence satisfies the standards contained in this section.

 . . . .

 c. Evidence of previous sexual conduct shall not be considered relevant unless it is material to negating the element of force or coercion or to proving that the source of semen, pregnancy or disease is a person other than the defendant. For

*the purposes of this section, "sexual conduct" shall mean any conduct or behavior relating to sexual activities of the victim, including but not limited to previous or subsequent experience of sexual penetration or sexual contact, use of contraceptives, living arrangement and life style.*

[*Ibid.*]

Pursuant to the Rape Shield statute, a court must determine first, whether the proffered evidence of a victim's sexual conduct is relevant, and second, whether the evidence is unduly prejudicial, confusing or invasive of the victim's privacy.

However, the court must engage in a second "balance test" if a defendant challenges the preclusion of such evidence on the ground that preclusion would violate his right to confront the witnesses against him. Our Supreme Court has concluded that the Rape Shield statute cannot be used to bar evidence of a victim's sexual conduct where such evidence is relevant and material to defendant's defense. *State v. Budis,* 125 *N.J.* 519, 532, 593 *A.*2d 784 (1991).

Under the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the New Jersey Constitution, the accused in a criminal prosecution shall have the right "to be confronted with the witnesses against him." Confrontation has been defined to include the primary right of cross-examination. *Davis v. Alaska,* 415 *U.S.* 308, 315–16, 94 *S.Ct.* 1105, 1110, 39 *L.Ed.*2d 347, 353 (1974). However, the right to confrontation and cross-examination is not absolute and, in appropriate cases, may "bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 *U.S.* 284, 295, 93 *S.Ct.* 1038, 1046, 35 *L.Ed.*2d 297, 309 (1973).

At the *Rule* 8 hearing, M.K. testified consistent with the proffer by defendant's counsel. K.K. testified and admitted that his romantic relationship with L.K. included sexual activity, but he categorically maintained that he and L.K. engaged in sexual intercourse for the first time in April 1987.

At the conclusion of that hearing, the court ruled that defendant would be precluded from offering any testimony respecting L.K.'s

sexual activity with K.K. However, M.K.'s testimony would be partially admissible. M.K. would be permitted to recant his grand jury testimony but would not be permitted to offer his alleged sexual activity with L.K. M.K. was instructed that his explanation for recanting would be limited to a fear of his sister without an explanation of what facts or action of L.K. prompted that fear.

Defendant maintains that the preclusion of the testimony of K.K. and the limitations imposed on the testimony of M.K. violated his state and federal constitutional rights to confrontation. We do not agree.

Preliminary to our consideration of the correctness of defendant's contention, we must review portions of the testimony presented at trial prior to the court's preclusion ruling. Through the testimony of L.K. and from testimony presented by K.K. and M.K. at the *Evidence Rule* 8 hearing, defendant was portrayed as a strict disciplinarian in the performance of household chores and social behavior.

L.K.'s mother obtained a job as an evening waitress. Although she initially worked three evenings each week, by February 1987, she was working five evenings a week. In her mother's absence, L.K. was required by defendant to prepare the dinner meal for defendant, M.K. and her two younger half-siblings. She was also required to care for the younger children and prepare them for bed. L.K. testified that while her mother was away from home, either at work or attending a church-sponsored Bible class, her stepfather induced her to engage in sexual activities.

Testimony established that defendant prohibited L.K. from using the family telephone to engage in social conversations with teenage boys and removed a private telephone from L.K.'s bedroom. He prohibited L.K. from inviting all teenage boys to the home, and on one occasion, refused to permit K.K. to visit the home as part of a group that was planning a Christmas carol walk through the neighborhood.

At the *Evidence Rule* 8 hearing, M.K. testified, and K.K. admitted, that on one occasion in December 1986, M.K. entered L.K.'s bedroom and discovered her with K.K. in bed. M.K. observed that L.K.'s breast was exposed.

On or before February 4, 1987, believing that she was pregnant, L.K. confided that fear to K.K. in a telephone conversation. K.K. testified that as of that date, he and L.K. had never engaged in sexual intercourse. Knowing that he was not responsible for her pregnancy, K.K. prodded L.K. to reveal the name of the responsible individual. L.K. stated that her father was "having incest" with her and urged K.K. not to reveal that information to anyone. Unbeknownst to either L.K. or K.K., K.K.'s mother overheard the conversation on a telephone extension. She contacted school authorities the next day. D.Y.F.S. was notified, and the ensuing investigation led to defendant's arrest and indictment.

The court concluded that K.K.'s testimony was truthful and thus, K.K. could not have been responsible for L.K.'s fear of pregnancy. The court reasoned that evidence of L.K.'s prior sexual activities with K.K. was inadmissible because K.K. could not have been "the source of semen, pregnancy or disease" as set forth in *N.J.S.A.* 2C:14–7c.

L.K.'s sexual relationship with K.K. would clearly demonstrate the intensity of their relationship and thus would be relevant to demonstrate of L.K.'s bias or motive to fabricate, so as to remove defendant from the home. However, its probative value was clearly outweighed by its undue prejudice. *Evidence Rule* 4 (now *N.J.R.E.* 403). There was ample evidence to demonstrate the reasons for L.K.'s bias and motive to fabricate. L.K.'s testimony contended that defendant was a strong disciplinarian and interfered with any social relationship she sought to have with K.K. The jury was not required to know that L.K. and K.K. engaged in some sexual activity. L.K.'s tendency to fabricate was also presented to the jury by her grandmother (defendant's mother), by her closest teenage friend, A.C., and by testimony that L.K.'s mother did not believe L.K.'s accusations and supported

defendant. We conclude that the court's decision to preclude the testimony of K.K. was correct. The court's decision was consistent with *State v. Ryan*, 157 *N.J.Super.* 121, 125–26, 384 *A.2d* 570 (App.Div.1978) and with *Budis, supra*, which was decided after the trial.

The limitation on the intended testimony of M.K. raises a more difficult question. The State never called M.K. as a witness to prove the allegations of count five of the indictment. It relied solely on L.K.'s version of the underlying facts as its sole evidence as to that particular charge. The court's limitation on M.K.'s testimony did not rise to the level of violating defendant's right of confrontation of witnesses through cross-examination as cross-examination was unnecessary. Once the State elected not to call M.K. as a witness, M.K.'s testimony would have been available to the defense. The defendant elected not to call M.K. as a defense witness. Defendant's allegation of error on this point is therefore without merit.[3]

### III

Defendant also contends the prosecutor's comments during summation prejudiced his right to a fair trial.

It has been recognized that prosecutors occupy a unique position in our criminal justice system. *State v. Ramseur*, 106 *N.J.* 123, 320, 524 *A.2d* 188 (1987), *cert. denied*, —— *U.S.* ——, 113 *S.Ct.* 2433, 124 *L.Ed.2d* 653 (1993). Although they must prosecute with both "earnestness and vigor" and may "strike hard blows," they are not "at liberty to strike foul ones." *State v. Marks*, 201 *N.J.Super.* 514, 535, 493 *A.2d* 596 (App.Div.1985),

---

[3] M.K. could have been called as a defense witness and could have denied the event. The fact that he gave inconsistent testimony before the grand jury, or his reasons for fabricating that testimony, would only be useful were the State to have elicited the fact of prior inconsistent testimony during its cross-examination of M.K. We do not find it appropriate to comment on that hypothetical evidentiary ruling.

*certif. denied,* 102 *N.J.* 393, 508 *A.*2d 253 (1986) (quoting *Berger v. United States,* 295 *U.S.* 78, 88, 55 *S.Ct.* 629, 633, 79 *L.Ed.* 1314, 1321 (1935)). Generally, a prosecutor is limited to commenting upon the evidence and the reasonable inferences that may be drawn therefrom. *State v. Bucanis,* 26 *N.J.* 45, 56, 138 *A.*2d 739, *cert. denied,* 357 *U.S.* 910, 78 *S.Ct.* 1157, 2 *L.Ed.*2d 1160 (1958); *State v. Bogen,* 13 *N.J.* 137, 140–41, 98 *A.*2d 295, *cert. denied sub nom. Lieberman v. New Jersey,* 346 *U.S.* 825, 74 *S.Ct.* 44, 98 *L.Ed.* 350 (1953); *accord, State v. Savage,* 120 *N.J.* 594, 637, 577 *A.*2d 455 (1990).

However, prosecutors, within reasonable limitations, will be afforded considerable leeway in making opening statements and summations. *State v. Williams,* 113 *N.J.* 393, 447, 550 *A.*2d 1172 (1988). A prosecutor is allowed "a vigorous and forceful presentation of the State's case which may be couched in trenchant terms." *State v. Pindale,* 249 *N.J.Super.* 266, 285, 592 *A.*2d 300 (App.Div.1991). Moreover, prosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct complained of "was so egregious that it deprived defendant of a fair trial." *Ramseur, supra,* 106 *N.J.* at 322, 524 *A.*2d 188.

In determining whether prosecutorial misconduct was prejudicial and denied a defendant a fair trial, we must assess whether defense counsel made a timely and proper objection, whether the remark was promptly withdrawn, and whether the trial court ordered the remark stricken from the record and instructed the jury to disregard it. *Id.* at 322–23, 524 *A.*2d 188. If defense counsel fails to object, the offending remarks usually will not be deemed prejudicial. *Id.* at 323, 524 *A.*2d 188.

We need not recount each of defendant's numerous allegations of prosecutorial misconduct in his summation. We note in our review of the record, that where defendant's counsel objected, those objections were sustained by the trial court; *Ramseur, supra,* 106 *N.J.* at 323, 524 *A.*2d 188, or a curative instruction was given eliminating any resulting prejudice. *State v. Darrian,* 255 *N.J.Super.* 435, 455, 605 *A.*2d 716 (App.Div.), *certif. denied,* 130

*N.J.* 13, 611 *A.2d* 651 (1992). Additionally, the court specifically charged the jury that statements of attorneys are not to be considered as evidence. *Ramseur, ibid.*

One comment in the State's summation deserves special attention. The prosecutor stated:

> The other thing is that the defendant gives her a lot more credit for intelligence and creativity than I submit you ever saw on the stand or exists in reality because this is far too detailed a picture involving far too much information regarding knowledge of sex, knowledge of sexual acts, what people say, how people act, that some kid can make up on her own at that particular age. Doesn't make any sense.

At the conclusion of the summation, defense counsel objected to that statement and requested a mistrial. Defendant argued that the prosecutor unfairly commented on L.K.'s naivete and that her age precluded her knowledge of the details of sexual activity which she graphically included in her testimony. He, therefore, implied that L.K.'s knowledge could only have been learned from her activity with defendant. Defendant contends that the comment was unfair because the prosecutor knew that defendant had been precluded from offering testimony of L.K.'s sexual activity with both K.K. and M.K. The court denied the request for a mistrial as L.K.'s sexual activity with K.K. and M.K., gleaned from their testimony during the *Rule* 8 hearing, did not predate the sexual activity allegedly initiated by defendant, and at best, those acts occurred contemporaneously with defendant's alleged sexual abuse. The court viewed the prosecutor's comment as a fair response to defendant's contention that L.K. had fabricated the allegations. We agree with the trial court that a mistrial was not required, particularly in light of the court's charge that statements of the prosecutor were not to be considered as evidence. Viewing the prosecutor's summation in its entirety, his comments as a whole were not so egregious as to deny defendant a fair trial. This is particularly so in reference to those comments which defendant argues on appeal were error but where no objection was

asserted by defendant at trial.[4]

We have carefully reviewed points five, six and seven in defendant's brief and find those arguments clearly without merit. *R.* 2:11-3(e)(2). In light of our reversal of defendant's conviction, we need not address point eight, which alleges an error in sentencing.

The judgment of conviction is reversed, and the matter is remanded for a new trial.

SHEBELL, P.J.A.D., dissenting.

A retrial of this case is neither legally required, nor morally justifiable. The ground on which the majority would reverse is based on its findings of plain error under *R.* 2:10-2, in that the trial judge failed to enumerate and detail for the jury the specific purposes for which the *Evid. R.* 55 evidence was admissible. *See State v. Oliver,* 133 *N.J.* 141, 627 *A.*2d 144 (1993) and *State v. Stevens,* 115 *N.J.* 289, 558 *A.*2d 833 (1989).

I find no plain error or even prejudice to the defendant in this regard. The majority acknowledges that on at least three occasions, at critical times during the testimony and charge, the judge told the jury at length that under no circumstances could the evidence of other crimes be used to infer that the defendant had a disposition to commit the offenses for which he was being tried. I do not question the fact that the trial judge should have specifically told the jury that the testimony of the prior offense was offered, (1) for consideration on the issue of defendant seeking his own sexual gratification by contact with the child-victim, it being an element of present alleged offense, and, (2) to explain why the child had not confided in her mother with regard to defendant's renewed sexual activities, as her mother did not take her daughter's part on the prior occasion. However, neither the State nor the defendant requested such a specific charge. This omission

---

[4] It would behoove the prosecutor prior to the retrial of this indictment to read defendant's brief on appeal. Many of the alleged errors can be avoided on retrial.

was not objected to by the defendant. The failure to object should not be surprising as such a charge could only have worked to the detriment of the defendant, by specifically directing the jury as to the manner in which it could use the evidence against him. The defendant was sufficiently protected by the cautionary instruction given on three occasions by the trial judge. Thus, I would find no error—let alone plain error. *See R.* 2:10–2.

[A paragraph and its footnote have been deleted for purposes of publication as they contain material deemed confidential thereby requiring that they be impounded.]

I agree with the majority that there is no other reversible error and I would, therefore, affirm defendant's conviction and sentence.