720 A.2d 612

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
STENNETT A. ROWE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 4, 1998—Decided November 25, 1998.

426

Before Judges MUIR, Jr., KEEFE and COBURN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Kevin G. Byrnes*, Designated Counsel, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Daniel I. Bornstein*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

The defendant, Stennett A. Rowe, was found guilty by a jury of sexual assault, *N.J.S.A.* 2C:14-2c, and criminal sexual contact, *N.J.S.A.* 2C:14-3b. After merging the convictions, the trial judge imposed a sentence on the sexual assault charge of eight years imprisonment and the appropriate statutory penalties. We affirm.[1]

The victim, M.H., a woman of twenty-nine years, and the defendant, a man of thirty-four years, lived within a block of each other on the same street in New Brunswick and had been acquaintances for over a decade. M.H. first met defendant about eleven years before the rape when she was dating his brother.

On the afternoon of July 18, 1995, M.H., who lived with her mother, L.D., left home, intending to walk to a nearby hospital to visit her sick nephew. Shortly thereafter, she met the defendant and at his invitation accompanied him to his home, where approximately two weeks before they had a pleasant and uneventful visit.

The defendant led M.H. to his basement room, closed the door, and tied it with a piece of cord or wire. He took off his shirt and sat beside her on a couch. The day was hot and muggy and she

---

[1] We consolidated the defendant's appeals in A–3307–96T4 and A–3346–96T4. No arguments have been submitted with respect to the latter appeal, which related to an adjudication of a violation of probation on Middlesex County Grand Jury Indictment 94–06–0840. Therefore, the notice of appeal in that matter is dismissed. *R.* 2:8–2.

did not think anything of the shirt removal. After they talked for awhile and M.H. was about to leave, defendant sat on his bed and then walked toward M.H., holding his exposed penis in his hand. Standing directly over M.H., who was still seated on the couch, defendant said, "[C]ome on, let's get busy." M.H. said, "No." She started to walk out, but he grabbed her, pushed her on the couch, and fell on top of her. She angrily told him to get up. He did, and she began to leave again. He grabbed her, threw her on the couch, and demanded that she "give him some head." She said, "No." He got off her again, as requested, but when she started to walk out, he grabbed her faster and harder than before and threw her on the bed. He fell on top of her and said, "[I]t wasn't going to take that long, it was only going to take a couple of minutes." She tried to resist physically but was unable to free herself. He reached towards the drawer of a night table and said, "[D]on't make me get ugly." She feared that he was reaching for a weapon. He pulled her panties aside, forced his penis into her vagina, and said, "[W]hy don't you just make love to me?" She began to cry. After a few minutes, he said, "I'm not going to come in you." He then withdrew and ejaculated on the blouse she was wearing.

M.H. immediately went home. Her mother, L.D., testified that she was surprised to see her daughter so soon after she had left to make the hospital visit. In her judgment, not enough time had passed for the hospital visit to have happened. Because M.H. was crying and very upset, her mother asked what was the matter. M.H. said she had been raped by the defendant. As a result, and without prompting by M.H., L.D. called the police, who arrived within minutes. At that time, M.H. appeared to the police to be "dazed, sort of confused. She was upset [and] crying." She related that she had just been raped by the defendant.

The police accompanied M.H. to the Rape Crisis Center at Roosevelt Hospital. She was treated for aches and pains and a bruise on her arm. Semen, later determined to be consistent with

defendant's blood type, was recovered from her blouse and panties.

Defendant called B.D., M.H.'s recently ex-boyfriend, as a witness. He said that about two weeks before the trial M.H. and he had an argument over money during which she said, "she would do to [him] what she did to that other nigger." He also said that he told L.D. of M.H.'s remark. L.D. testified that B.D. told her about the remark in a telephone conversation, but had thereafter on three separate occasions said that he had made that story up. M.H. denied having made the remark.

Defendant testified that M.H. had proposed sex that day and that she freely and happily consented to it. Afterwards, she asked him for money. He refused, her manner changed, and she left. He said that M.H. took her clothes off before they had sex, leaving unexplained the presence of his semen on her blouse. He also indicated there was no struggle, leaving unexplained M.H.'s arm bruise. He claimed that he first saw M.H. that day between 2 p.m. and 3 p.m. He claimed they spent two-and-a-half to three hours together and that the sexual act lasted for a couple of hours. He specifically claimed that his penis was in her vagina for an hour-and-a-half to two hours. That testimony could be seen as inconsistent not only with M.H.'s testimony, but with L.D.'s testimony regarding the surprisingly brief period of time that M.H. was out of the house that afternoon.

We turn to defendant's primary point:

## POINT I

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 1 OF THE *NEW JERSEY CONSTITUTION* AND DEFENDANT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 10 OF THE *NEW JERSEY CONSTITUTION* WERE VIOLATED WHEN THE TRIAL COURT IMPROPERLY EXCLUDED HIS PROFFER OF EVIDENCE OF HIS PREVIOUS CONSENSUAL SEXUAL RELATIONSHIP WITH THE ALLEGED VICTIM OF SEXUAL ASSAULT.

Specifically, defendant claims the trial court erred in disallowing evidence of alleged prior consensual acts of sexual intercourse between him and the alleged victim, M.H. The issue arose pretrial when the defendant's attorney filed a motion to admit such evidence under the Rape Shield Law, *N.J.S.A.* 2C:14–7. The motion was supported only by a certification of the attorney in which he said:

> I expect to be able to adduce the existence of a prior sexual relationship between the alleged victim and defendant. The prior sexual relationship at issue consisted of multiple episodes of intercourse spanning a time period of about one year. The one year period commenced approximately twelve months prior to the events alleged in the instant indictment, and ended approximately one week prior to the events alleged in the instant indictment.

At the hearing, when repeatedly pressed by the trial judge for specifics, the attorney chose not to supply them. The attorney explained this decision as follows:

> Judge, I am not inclined to try the case at this point. I'm not inclined to reveal at this point to the prosecutor what Mr. Rowe's contentions are. I don't think that the State is entitled at this time to know the sum and substance of the details that Mr. Rowe will present at time of trial. So I'm just not inclined to provide that information.

Judge Barnett E. Hoffman denied the motion because of the inadequacy of defendant's proffer. Judge Hoffman based this ruling primarily on the defendant's failure to provide particulars, which in the judge's view made it impossible for him to make the required findings under the Rape Shield Law that might justify admission of the proffered evidence. Because we agree that the proffer was inadequate, we affirm Judge Hoffman's ruling.

The Rape Shield Law provides in pertinent part:

> d. Evidence of the victim's previous sexual conduct with the defendant shall be considered relevant if it is probative of whether a reasonable person, knowing what the defendant knew at the time of the alleged offense, would have believed that the alleged victim freely and affirmatively permitted the sexual behavior complained of.

[*N.J.S.A.* 2C:14–7d.]

The Rape Shield Law also places the following obligations on the trial court once the application for admission of such evidence is made:

After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the victim is relevant and highly material and meets the requirements of [subsection] d of this section and that the probative value of the evidence offered substantially outweighs its collateral nature or the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim, the court shall enter an order setting forth with specificity what evidence may be introduced and the nature of the questions which shall be permitted, and the reasons why the court finds that such evidence satisfies the standards contained in this section. The defendant may then offer evidence under the order of the court.

[*N.J.S.A.* 2C:14–7a.]

In *Michigan v. Lucas*, 500 *U.S.* 145, 111 *S.Ct.* 1743, 114 *L.Ed.*2d 205 (1991), the Court upheld the notice-and-hearing requirement of Michigan's Rape Shield Law, which is similar to our own, against the argument that it violated the Sixth Amendment. The Supreme Court had this to say with respect to the purposes underlying the notice-and-hearing requirement:

The Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy. The statute also protects against surprise to the prosecution. Contrary to the Michigan Court of Appeals' statement that a notice requirement " 'serve[s] no useful purpose' " when the victim is alleged to have had a prior sexual relationship with the defendant, the notice requirement permits a prosecutor to interview persons who know the parties and otherwise investigate whether such a prior relationship actually existed. When a prior sexual relationship is conceded, the notice-and-hearing procedure allows a court to determine in advance of trial whether evidence of the relationship "is material to a fact at issue in the case" and whether "its inflammatory or prejudicial nature ... outweigh[s] its probative value."

[*Id.* at 149–50, 111 *S.Ct.* at 1746–47, 114 *L.Ed.*2d at 212 (alterations in original) (citations omitted).]

The Supreme Court proceeded to analogize the notice requirements of a rape shield law to the previously upheld notice requirements of court rules that require defendants to provide, in advance of trial, particulars regarding an alibi defense. The Court said, "Accelerating the disclosure of this evidence did not violate the Constitution ... because a criminal trial is not 'a poker game in which players enjoy an absolute right always to conceal their cards until played.'" 500 *U.S.* at 150, 111 *S.Ct.* at 1747 114 *L.Ed.*2d at 213 (citing *Williams v. Florida*, 399 *U.S.* 78, 82, 90

*S.Ct.* 1893, 1896, 26 *L.Ed.*2d 446, 450 (1970)). The Supreme Court also noted that in addition to avoiding surprise and harassment, Rape Shield Laws serve another legitimate state interest: protecting against "undue delay" during a trial. *Id.* at 152–53, 111 *S.Ct.* at 1748, 114 *L.Ed.*2d at 214.

In *State v. Scherzer,* 301 *N.J.Super.* 363, 694 *A.*2d 196 (App. Div.), *certif. denied,* 151 *N.J.* 446, 700 *A.*2d 878 (1997), a rape case in which we were concerned with a proffer of evidence regarding prior sexual activity made at trial without prior notice, *id.* at 418, 694 *A.*2d 196, we relied on the Supreme Court's decision in *Michigan v. Lucas,* and went on to observe:

> Whether exclusion is an appropriate sanction, depends on the balancing of relevant factors by the courts. Those factors include: (1) *was defendants' discovery violation due to willful misconduct (e.g., was it a tactical decision);* (2) would a mid-trial proffer have caused unfair surprise to the State; (3) were there alternatives to exclusion (e.g., recess, continuance, prosecutorial comment on discovery violation) and (4) the impact of witness preclusion on the outcome of the trial.
>
> [*Ibid.* (emphasis added) (citations omitted).]

■ Here the defendant unquestionably made a tactical decision not to provide details with respect to the alleged prior consensual sexual relationship. He purposely limited his proffer to counsel's statement that there had been "multiple" instances of "intercourse" during the preceding year, with the last occurrence being approximately a week before the alleged rape. That proffer was insufficient under the Rape Shield Law and amounted to a tactical decision constituting willful refusal to abide by the statute.[2]

In *State v. Millett,* 272 *N.J.Super.* 68, 639 *A.*2d 352 (App.Div. 1994), which did not involve the Rape Shield Law, we expressed the following views on proffers of evidence:

> We recognize that defense counsel made a rather specific representation and "spread on the record" what he hoped to prove about possible third-party guilt. The best technique is to make the offer of proof and preserve the record of excluded evidence in some more formal manner, either by testimony, if possible, or an affidavit or certification, or by preserving the proposed witness's written or

---

[2] The general validity of the Rape Shield Law is not open to question. *State v. Budis,* 125 *N.J.* 519, 593 *A.*2d 784 (1991).

adopted statement in the record by marking it for identification. *See R.* 1:7–3; *Evid. R.* 8(1) (*N.J.E.R.* 104(a)). The "proper ground work" for consideration of the question on appeal must be laid by counsel or the point can be forfeited on appeal. *See Duffy v. Bill,* 32 *N.J.* 278, 294, 160 *A.*2d 822 (1960); *see also State v. Johnson,* 46 *N.J.* 289, 291, 216 *A.*2d 392 (1966). The more specific and tangible the offer, the more likely appropriate preservation for appeal.

[*Id.* at 100, 639 *A.*2d 352.]

■ Here, by contrast, the defense counsel failed at the pretrial hearing to specifically represent what he hoped to prove at the trial. He chose not to call as witnesses the defendant, the victim, or anyone else. Compare *State v. G.S.,* 278 *N.J.Super.* 151, 169, 650 *A.*2d 819 (App.Div.1994), *reversed on other grounds,* 145 *N.J.* 460, 678 *A.*2d 1092 (1996), in which the child victim testified at the pretrial *in camera* hearing, and *United States v. Saunders,* 736 *F.Supp.* 698, 700 (E.D.Va.1990), *aff'd,* 943 *F.*2d 388 (4th Cir.1991), *cert. denied,* 502 *U.S.* 1105, 112 *S.Ct.* 1199, 117 *L.Ed.*2d 439 (1992), in which an FBI agent, the victim, and the defendant testified at the *in camera* hearing. Nor did he submit an affidavit or certification on personal knowledge from anyone bearing on the subject. While in other contexts these lapses might not have justified exclusion of the evidence, see *State v. Millett, supra,* 272 *N.J.Super.* at 100, 639 *A.*2d 352, in the context of the Rape Shield Law the form and indefiniteness of the proffer must be seen as warranting the trial judge's decision to bar testimony on the subject of prior sexual activity.

■ The crucial policies of the Rape Shield Law, which are the focus of this case, are (1) the avoidance of surprise and (2) the necessity of providing the judge with sufficient information so that he or she can decide if the rigorous requirements of the statute have been met.

To comply with the first policy of avoiding surprise and allowing the State a reasonable opportunity to prepare rebuttal evidence for trial, the prosecutor needs specific information regarding where, when, and under what circumstances the prior sexual activity occurred. For example, suppose a defendant contends intercourse occurred on a particular date or during a particular

week or month and at a particular place. With foreknowledge of that information, the prosecutor might be able to discover and produce incontrovertible evidence that the victim was somewhere else at the time.

To comply with the second policy of enabling the judge to determine, as required by the statute, whether the evidence is relevant and "highly material" and whether its probative value "substantially" outweighs its collateral nature; and whether there is a "probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim," *N.J.S.A.* 2C:14–7a, the judge must have details, not vague allegations. Furthermore, without detailed information, the judge cannot determine whether the evidence is "probative of whether a reasonable person, knowing what the defendant knew at the time of the alleged offense, would have believed that the alleged victim freely and affirmatively permitted the sexual behavior complained of." *N.J.S.A.* 2C:14–7d.

In furtherance of both policies, the Rape Shield Law requires the judge to issue an order "setting forth *with specificity* what evidence may be introduced and the nature of the questions which shall be permitted, and the reasons why the court finds that such evidence satisfies the standards [of the statute]." *N.J.S.A.* 2C:14–7a (emphasis added). Those reasonably required functions cannot be carried out when the court is confronted by nothing but vague allegations, as here.

The alibi defense rules are the appropriate starting point to guide implementation of the Rape Shield Law's notice requirement. With respect to the defense of alibi, our court rules require a defendant, on written demand of the prosecutor, to "furnish a signed alibi, stating the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi." *R.* 3:12–2(a). That requirement does not violate the privilege against self-incrimination: "The Constitution does not protect a defendant

from the consequences of the defense he makes, nor assure him a right so to defend as to deny the State a chance to check the truth of his position." *State v. Angeleri,* 51 *N.J.* 382, 385, 241 *A.*2d 3, *cert. denied,* 393 *U.S.* 951, 89 *S.Ct.* 372, 21 *L. Ed.*2d 362 (1968). A defendant's alibi notice may not be admitted into evidence by the State; nor may the State comment on the defendant's failure to produce any of his named alibi witnesses. *State v. Gross,* 216 *N.J.Super.* 92, 96, 523 *A.*2d 212 (App.Div.), *certif. denied,* 108 *N.J.* 194, 528 *A.*2d 19 (1987). However, if the defendant testifies, his alibi notice may be used in cross-examination as a prior inconsistent statement. *State v. Irving,* 114 *N.J.* 427, 437–41, 555 *A.*2d 575 (1989).

The principles applicable to alibi notices provide sound guidance for a fair implementation of the Rape Shield Law, since in both instances one of the major purposes of the detailed notice requirement is to avoid surprise. Moreover, as we have previously noted, the United States Supreme Court in *Michigan v. Lucas, supra,* analogized the notice requirements of rape shield laws to alibi notification laws.

 A defendant seeking to establish consent by introducing previous sexual relations with the victim should, whenever possible, certify in writing with reasonable specificity when, where, and under what circumstances the prior acts occurred, and should name any witnesses the defendant might call to testify at trial on this issue. Absent unusual circumstances, the defendant may not rely on an attorney's "certification," no matter how detailed that hearsay document might be. Upon receipt of a notice of motion supported by a certification, signed by the defendant, the trial court should schedule the statutorily mandated hearing. Whether the certification is sufficient is a matter that will rest in the sound discretion of the trial court. If the certification fails to provide enough detail for the court to make the required statutory findings, and to avoid surprise at trial, the defendant may file a supplemental certification or produce appropriate witnesses at the hearing. Furthermore, the defendant may testify. However, as

dictated by *N.J.R.E.* 104(d), the defendant may not be subjected "to cross-examination as to other issues in the case." Except perhaps in "extraordinary circumstances," the trial court's decision will not be based on judgments regarding credibility. *United States v. Saunders, supra,* 736 *F.Supp.* at 701.

The procedures outlined here are necessary to implement the Legislature's mandate and the policies it has endorsed in the Rape Shield Law.

Defendant also contends that the trial court committed plain error in its instructions defining sexual assault and by failing to give a *Kociolek* charge. *See State v. Kociolek,* 23 *N.J.* 400, 421, 129 *A.*2d 417 (1957). He also contends the verdict was against the weight of the evidence, that the merged charge of sexual contact should have been dismissed, and that the sentence was excessive. These arguments, contained in defendant's Points II through VI, are without merit and do not warrant discussion in a written opinion. *R.* 2:11–3(e)(2).

Affirmed.