219 N.J. Super. 452 (1987)
530 A.2d 806
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN THOMAS CUSICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1986.
Decided July 23, 1987.
*454 Before Judges MICHELS, O'BRIEN and SKILLMAN.
Judith B. Fallon, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Judith B. Fallon, of counsel and on the brief).
Jeffrey L. Menkin, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Jeffrey L. Menkin, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant John Thomas Cusick was found guilty of: (1) sexual assault by committing an act of sexual contact upon R.S., age eight, a crime of the second degree, in violation of N.J.S.A. 2C:14-2b (Second Count); (2) aggravated sexual assault by committing an act of sexual penetration upon R.S., a crime of the first degree, in violation of N.J.S.A. 2C:14-2a (Third Count); (3) sexual assault by committing an act of sexual contact upon R.S., a crime of the second degree, in violation of N.J.S.A. 2C:14-2b (Fourth Count), and (4) endangering the welfare of a child, a crime of the third degree, in violation of N.J.S.A. 2C:24-4a (Fifth Count). After merging defendant's convictions for sexual assault (Fourth Count) and endangering the welfare of a child (Fifth Count) with his conviction for aggravated sexual assault (Third Count), the trial court committed defendant to the custody of the Commissioner of the Department of Corrections for 20 years with a ten-year period of parole ineligibility for the aggravated sexual assault. In addition, defendant was sentenced to a concurrent term of ten years with a concurrent five-year period of parole ineligibility for the sexual assault (Second Count). Finally, defendant was assessed penalties totaling $100, payable to the Violent Crimes Compensation Board. This appeal followed.
*455 Defendant seeks: (1) a reversal of his convictions for aggravated sexual assault (Third Count), sexual assault (Fourth Count) and endangering the welfare of a child (Fifth Count) and the entry of a judgment of dismissal; (2) a reversal and a remand for a new trial with respect to the sexual assault (Second Count), or, alternatively, (3) 274 days jail credit against his sentences. The grounds on which he seeks this relief are set forth in his brief as follows:
POINT I THE TRIAL COURT'S FAILURE TO GRANT DEFENDANT ACCESS TO THE FILES MAINTAINED BY THE DIVISION OF YOUTH AND FAMILY SERVICES CONCERNING THE COMPLAINANT DENIED DEFENDANT HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO CONFRONT WITNESSES AGAINST HIM AND TO A FAIR TRIAL
POINT II THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY ADMITTING EVIDENCE OF UNRELATED PRIOR SEXUAL ASSAULTS BY DEFENDANT
POINT III THE TRIAL COURT'S ADMISSION OF AN ALLEGED STATEMENT BY THE DEFENDANT CONSTITUTED REVERSIBLE ERROR
POINT IV THE INDICTMENT WAS SO BROADLY DRAWN THAT IT DENIED DEFENDANT DUE PROCESS (Not Raised Below)
POINT V THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ALLOW THE DEFENDANT TO CALL THE PROSECUTOR AS A WITNESS
POINT VI DEFENDANT WAS ERRONEOUSLY DENIED 128 DAYS JAIL CREDIT
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that, with the exceptions discussed hereinafter, they are clearly without merit. R. 2:11-3(e)(2). Further comment with respect to some of the other issues raised is also appropriate.

I.
Defendant contends that the failure to grant him access to the files on R.S. maintained by the Division of Youth and Family Services (DYFS) and the Arthur Brisbane Child Treatment Center (Brisbane) denied him his federal and state constitutional rights to confront witnesses against him and to a fair trial. Essentially, defendant claims that he "was denied the *456 tools necessary to effectively cross-examine the State's chief witness, [R.S.]."
Defense counsel subpoenaed the records concerning R.S. from both DYFS and Brisbane. DYFS had also counseled R.S. on the previous occasion that defendant had molested her and, thus, had information pertaining to both instances of abuse. Brisbane, where R.S. was living at the time of the trial, only had records concerning the most recent complaint of sexual molestation. A Deputy Attorney General representing both DYFS and Brisbane appeared before the trial court to explain that the subpoena could not be complied with because turning over the records which defendant sought was prohibited by statute. The provision governing disclosure of the DYFS records is N.J.S.A. 9:6-8.10a, which provides in pertinent part:
a. All records of child abuse reports made pursuant to section 3 of P.L. 1971, c. 437 (C. 9:6-8.10), all information obtained by the Division of Youth and Family Services in investigating such reports including reports received pursuant to section 20 of P.L. 1974, c. 119 (C. 9:6-8.40), and all reports of findings forwarded to the central registry pursuant to section 4 of P.L. 1971, c. 437 (C. 9:6-8.11) shall be kept confidential and may be disclosed only under the circumstances expressly authorized under subsection b. herein.
b. The division may release the records and reports referred to in subsection a., or parts thereof, to: .. .
(6) A court, upon its finding that access to such records may be necessary for determination of an issue before the court, and such records may be disclosed by the court in whole or in part to the law guardian, attorney or other appropriate person upon a finding that such further disclosure is necessary for determination of an issue before the court.
The provision governing disclosure of the Brisbane records is N.J.S.A. 30:4-24.3, which states that:
All certificates, applications, records, and reports made pursuant to the provisions of this Title and directly or indirectly identifying any individual presently or formerly receiving services in a noncorrectional institution under this Title, or for whom services in a noncorrectional institution shall be sought under this act shall be kept confidential and shall not be disclosed by any person, except insofar as: ...
(3) a court may direct, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to the public interest.
*457 The trial court found that access to the DYFS and Brisbane records may be necessary for the determination of the issue of credibility. Thus, all of the records which had been brought to court were turned over to the trial court which reviewed them in chambers. The trial court noted that although some of the DYFS reports from the most recent episode of alleged abuse had been provided to the defense through discovery, neither defendant nor the State had seen the DYFS and Brisbane records that the trial court had examined. The DYFS file, approximately three inches thick and consisting of "little notes, little scratch sheets and that sort of thing" was deemed too voluminous to describe in detail for the record. However, the trial court identified the Brisbane file as a three-leaf folder which is divided into subsections entitled "physician's orders, physician's records, assessments, assessment update, treatment plan progress notes, clinical, education, consultation." Some of the sections had entries, some did not.
In essence, the trial court held that: (1) disclosure of the records is not essential to the resolution of any issue before the court, nor was disclosure necessary for the conduct of the proceedings, and (2) most, if not all, of the information contained in the records could be obtained from other sources through diligent investigation. In reaching this conclusion the trial court stated:
I have reviewed all of these and suffice it to say there is nothing in this Court's opinion in any of those reports that in this Court's opinion is necessary to be disclosed to the defense for the conduct of this proceeding or for determination of an issue before this Court.
Almost 80 percent, 90 percent of that which is contained in the DYFS reports are just factual little bits that have absolutely no bearing as far as I am concerned on any issue that is involved here.
Now, it may be said and it may be argued at some other point that, well, any report that has any information dealing with the child becomes significant and the Court should not be able to make a determination that it is not necessary for a determination of the issue. How do you know that in a vacuum until you see exactly how the matter develops? But that's not the point in this Court's opinion.
The point is that we are talking about confidentiality [sic] records, and just because it may have a tendency to provide information, that it may have a *458 tendency to be determinative of an issue before the Court such as credibility, just because that is so does not mean that they are to be disclosed.
I find that almost all of the information that is in those reports is obtainable and can be obtainable from other sources. But certainly somebody else's impressions or notes as to the girl, say, sleeping at night  "She was sleeping on her left side," or, "Right side"  I just use that as an example  that's not what's in there  but there are that kind of notes. That certainly is not something that should be disclosed because it may be determinative of an issue in some way, shape or form.
What these statutes refer to and what these statutes are concerned with is in my opinion simply this: It says to the Court, you are not going to reveal all those because there is a very good reason for keeping DYFS records and Brisbane records confidential; that is to protect the sources of the information that are in there. It is to protect the people who are conducting evaluations and, most importantly, it is to protect the person who is the subject matter, or persons who are the subject matter of these particular reports, in particular here, [R.S.] and in the matter of Brisbane; that people should be able to be free in their discretions as to their opinions, because only in that way is the child  patient, if you will  going to get the appropriate treatment. When people who are working, we'll say, at Brisbane see the child and see the child in various settings, they should be free to express their feelings and their observations in a very open manner in their notes so that when doctors and other skilled personnel, such as psychiatrists, psychologists and other people who are there to help with the patient, pick up the reports they can read all of these things and they can read it in as full detail as is necessary.
If the Court is to, under the guise of simply the issue of the way it may affect credibility, open up these reports it will stifle the ability of the people who have written these reports to be free and open when they feel that, "Well, the Court, if there is any relationship at all, is going to allow that to come out and then I am going to have to testify to all of that sort of stuff."
That's what these statutes are involved with. That's what these are all involved with. They say, "Don't, unless it really is necessary for a determination of an issue."
There is nothing in these reports that could not have been determined from other sources with thorough and diligent investigation or that could in any way be determinative of an issue before this Court as far as I am concerned.
The second part of Title 30 talks about, "And that failure to make such disclosure would be contrary to public interest." There is nothing in here that would be contrary to the public interest if they were disclosed.
Suffice it to say, after reviewing all of these documents the Court is of the opinion that there should not be disclosure of any of the contents of the DYFS reports or files that were presented to me nor should there by any disclosure of the contents of the Brisbane report that has been brought to me.
After defendant noted that the refusal to order disclosure of the records may be infringing his Sixth Amendment rights of *459 confrontation and cross-examination and his Fifth Amendment right of due process, the trial court stated:
There are competing demands; there is no question about that. And the competing demands are the defendant's right to discovery of all material that may have or may lead to relevant information, and the statutory prohibition against the release of particular information because of the public policy expressed in the statutes to keep these items confidential. And those competing demands are here; there is no doubt about it.
I have determined that the need for the nondisclosure and the need for confidentiality, after reviewing those records, is not outweighed by any need for disclosure, because I have made a determination that disclosure is not necessary  disclosure of that which is contained in there is not necessary for the determination of an issue before this Court.
We are entirely satisfied that the procedure employed by the trial court was proper in all respects. The failure to disclose the DYFS and Brisbane records did not violate defendant's Sixth Amendment right to confront witnesses or his Fifth Amendment right of due process. The trial court's determination that these considerations did not outweigh the need for confidentiality is amply supported by the record.
Although our case law militates against a finding of constitutional infirmity in the circumstances presented here, cf. In re Myron Farber, 78 N.J. 259 (1978), cert. den. sub nom. New York Times Company and Myron Farber v. New Jersey and Mario E. Jascalevich, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); State v. Boiardo, 82 N.J. 446 (1980); State v. Oliver, 50 N.J. 39 (1967), defendant relies heavily upon a Pennsylvania Supreme Court decision in claiming that his compulsory process and confrontation rights entitled him to see the DYFS and Brisbane files. In Commonwealth v. Ritchie, 509 Pa. 357, 502 A.2d 148 (1985), the defendant was convicted of rape, involuntary deviate sexual intercourse, incest and corruption of minors for alleged incidents of sexual contact with his 12-year-old daughter. The case reached the Supreme Court of Pennsylvania on the issue of whether denying defendant access to the entire Child Welfare Services (CWS) file on the victim, pursuant to a statutory privilege of confidentiality, had infringed defendant's Sixth Amendment rights.
*460 As in the case at bar, the primary reasons advanced by defense counsel in Ritchie to support his request for disclosure of the CWS files "was that there `could be defense witnesses disclosed by their records there. There could be matters in there that would be favorable to the defendant.'" 502 A.2d at 159. When questioned by the trial court as to the kind of witnesses he hoped to find in the file, defense counsel responded, "`I don't know. Could be lots of witnesses.'" Ibid. Unconvinced by these arguments, the trial court denied defendant access to the CWS records. However, the appellate court ruled that, under Matter of Pittsburgh Action Against Rape, 494 Pa. 15, 428 A.2d 126 (1981) (PAAR), defendant was entitled to a limited examination of the records. In PAAR, the balance struck between the societal interest of promoting communication between rape victims and rape crisis counselors and that of arriving at the truth in criminal matters was that "upon defense request, a trial court should authorize defense inspection of that portion of the crisis center's file which reflects verbatim statements of the complainant bearing on the facts of the alleged offense." Ritchie, supra, 502 A.2d at 155. The appellate court in Ritchie ruled to grant defendant therein a similar right of inspection and also adopted the in camera procedures and substantive limitations established in PAAR, to wit:
(1) only "notes that are verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said" are to be inspected by defense counsel; (2) the trial court is to conduct an in camera inquiry to determine whether the matters contained in the rape crisis counselor's files are such verbatim only "statements"; (3) after the trial court identifies the verbatim statements of the complainant, the defense counsel is to examine "these statements with an eye toward the utility or permissibility of their ultimate use at trial"; and (4) the defense counsel need not be given access to all statements in the file  rather, the court is to withhold from defense inspection "statements contained in a ... file [that] have no bearing whatsoever on the facts of the alleged offense and [that] relate instead only to ... counselling services...." [Ritchie, supra, 502 A.2d at 156 (quoting PAAR, supra, 428 A.2d at 132)].
In short, the appellate court held that defendant could examine only those verbatim statements of the victim which the court, upon in camera inspection, deemed necessary to the defense.
*461 Based upon Sixth Amendment considerations, the Pennsylvania Supreme Court concluded that the lower courts had erred in refusing defendant complete access to the CWS files. The Court reasoned that "[w]hen materials gathered become an arrow of inculpation, the person inculpated has a fundamental constitutional right to examine the provenance of the arrow and he who aims it." Ritchie, supra, 502 A.2d at 153. Moreover, in camera inspection of the CWS files by the trial court was deemed inadequate to safeguard defendant's rights because "the eye of an advocate may see connection and relevancy in any material gathered from the victim, other witnesses, or circumstances developed by the investigation of a child." Ibid.
Justice Larsen's dissenting opinion in Ritchie underscores some basic flaws in the majority's holding. Justice Larsen accurately observed that one of the majority's justifications for ordering disclosure,  that a defendant had a right to know the source of the accusations made against him,  is meritless:
Since the "arrows of inculpation" were never in the Commonwealth's possession, nor used against him [defendant] in the criminal proceedings, this metaphor must be viewed as a melodramatic non sequitur, entertaining, perhaps, but having no place in the "careful balance" that we must perform to resolve the tension between the appellee's Sixth Amendment rights in this case versus the victim's and state's interests in preserving the confidentiality of the CWS files. [Id. at 158 (Larsen, J., dissenting) (Emphasis in the original)].
Although not addressed in the dissenting opinion, the Ritchie majority's other rationale  that the eye of an advocate is most adept at discovering the potential relevance or materiality of evidence  is likewise subject to criticism. In the course of a trial, the ultimate arbiter of questions of relevance or materiality is not the biased advocate, but rather the trial court. There is no basis for holding, as the Ritchie majority implicitly did, that the trial court is less capable of making these determinations in the context of an in camera inspection. Moreover, the statement that the advocate could find relevancy in any material implies that the Ritchie majority would always demand that child abuse records be turned over to the accused. Clearly, this *462 position is at odds with the legislative purpose behind enacting a statute to preserve the confidentiality of such records.
On February 24, 1987, following oral argument of this matter, the United States Supreme Court reversed the decision of the Pennsylvania Supreme Court. Pennsylvania v. Ritchie, 480 U.S. ___, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Writing for a plurality of the Court, Justice Powell noted that "the ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. at ___, 107 S.Ct. at 999, 94 L.Ed.2d at 54. "The Confrontation Clause only guarantees `an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'". Id. at ___, 107 S.Ct. at 999, 94 L.Ed.2d at 55 (quoting Delaware v. Fensterer, 474 U.S. 15, 18-19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985) (Emphasis in the original)). Furthermore, the Court reasoned that the right of confrontation under the Sixth Amendment of the United States Constitution is not tantamount to a constitutionally compelled rule of pretrial discovery. Thus, the Court held that a defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. In reaching this conclusion, the Supreme Court explained:
We find that Ritchie's interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for in camera review. Although this rule denies Ritchie the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file (e.g., the medical report), he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.
To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most difficult *463 crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt, and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth  like all other States  has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result. [Id., 480 U.S. at ___, 107 S.Ct. at 1003-004, 94 L.Ed.2d at 59-60 (Footnote omitted)].
Ritchie confirms the propriety of the trial court's determination here not to disclose the DYFS and Brisbane files concerning R.S. Moreover, after reviewing the materials in camera, the trial court concluded that the information was available elsewhere and that, regardless of its availability through other sources, the information was not determinative of any issues before the court or necessary for the conduct of the proceedings. In our judgment, the trial court meticulously followed the procedures set forth in our statutes and properly refused to permit defendant to inspect the files.
We obtained and reviewed in camera a copy of the files delivered to the trial court.[1] Our examination shows that the information contained in the DYFS and Brisbane materials could not have been used in any manner to impeach the testimony of the State's witnesses. Furthermore, we are satisfied that there is no other information in the files which, if revealed to defendant, would have changed the outcome of this trial.

*464 II.
Contrary to defendant's claim, we are also convinced that the trial court did not commit error by admitting evidence of an unrelated prior sexual assault by defendant. On February 6, 1982, defendant pleaded guilty to three counts of sexual assault charged in a previous indictment. The victims of those offenses were: (1) one of the complaining witnesses in this case, R.S., then six years old; (2) R.S.'s friend, T.L.J., and (3) another of R.S.'s friends, M.J., then age eight. Over defendant's objection, the trial court admitted under Evid.R. 55 the testimony of M.J. regarding the prior incident for purposes of showing absence of mistake or accident, state of mind and motive. By the same reasoning, the trial court denied defendant's motion to strike that portion of R.S.'s testimony dealing with acts of sexual abuse which were the subject of the earlier guilty plea. Defendant alleges error, claiming that: (1) the prior crime testimony is inadmissible under Evid.R. 55; (2) even if the testimony is admissible under Evid.R. 55, it should have been excluded under Evid.R. 4, and (3) the trial court's instructions as to the limited purpose for which Evid.R. 55 testimony may be used were inadequate.

Evid.R. 55 provides:
Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.
We are satisfied that the testimony of M.J. and R.S. concerning the prior sexual assaults by defendant was properly admissible under Evid.R. 55. See State v. Wright, 132 N.J. Super. 130, 149-150 (App.Div. 1974) (Allcorn, J.A.D., dissenting), rev'g on dissent, 66 N.J. 466 (1975); State v. Hummel, 132 N.J. Super. 412, 425 (App.Div. 1975), certif. den. 67 N.J. 102 (1975).
Defendant was charged with aggravated sexual assault, sexual assault and endangering the welfare of a child with respect to R.S. and K.S. As to the victim K.S., defendant admitted that *465 at times he swung and cradled her, but denied ever having touched her genitalia or breasts in the process. As the State points out, because defendant's alleged fondling of K.S. was, by itself, as consistent with accidental or grandfatherly touching as with lascivious intent, evidence of the prior incident was admissible. Admission of the prior crimes evidence was necessary to try to rebut any potential defense of mistake. Lacking the knowledge of defendant's past, a jury might have found that although defendant had touched K.S.'s breasts or vagina that such touching occurred unintentionally when defendant was swinging or cradling the child. As R.S.'s testimony was the only inculpatory evidence with respect to the charges concerning K.S., there would have been considerable room for defendant to have argued mistake or accident. In this context, the trial court properly admitted evidence of defendant's past crimes.[2]
Another reason for which the prior crimes evidence was admissible was to prove defendant's intent when he performed the alleged acts of molestation. In defining for the jury the crime of sexual assault, the trial court noted that one of the material elements of that offense is that a defendant engage in sexual contact with the victim. The trial court went on to define sexual contact as:
the intentional touching by the defendant, either directly or through clothing, of the victim's intimate parts for the purpose of degrading or humiliating the victim, or for the purpose of sexually arousing or sexually gratifying the defendant. [Emphasis supplied].
Extremely probative of whether defendant's acts were done for purposes of sexual arousement or gratification was the evidence that defendant had previously pleaded guilty to having sexually assaulted young girls. This fact supported the inference that defendant enjoyed or was stimulated by sexual acts with young girls and was therefore relevant to whether or not *466 defendant was guilty of sexual contact. As sexual contact is a constituent element of the offense of sexual assault, the prior crimes evidence helped prove "some other fact in issue." Evid.R. 55. Furthermore, unlike crimes such as homicide, where the perpetrator's intent may be inferred from the manner in which the offense was committed, the nature of the crimes of sexual assault and endangering the welfare of a child do not give rise to any such inference. Thus, the testimony concerning defendant's prior sex crimes was properly admitted under Evid.R. 55 as evidence of defendant's intent.
Although this testimony was admissible, the trial court was required, pursuant to Evid.R. 6, to instruct the jury as to the limited purposes for which such testimony could be used. The trial court gave a proper limiting instruction with respect to M.J.'s prior crimes testimony as follows:
During the course of the trial you heard the testimony of one M.J. She testified as to certain acts done to her by the defendant on a prior occasion, and which were made actually the subject of a prior indictment which the defendant pled guilty to, pled guilty to those particular acts which [s]he testified to.
Now, normally such evidence like the testimony of M.J.'s is inadmissible under our rules of evidence. This is so because our rules of evidence specifically state that evidence that a person committed a crime on a prior occasion is inadmissible to prove a disposition to commit a crime on a subsequent occasion. Therefore, you may not take this evidence from M.J. and conclude from it that the defendant John Cusick is a bad person, and thus has a disposition which shows that he is likely to have done the act which he is charged with, or to show a general predisposition of the defendant to commit bad acts. That is not the purpose of allowing the testimony, and it should not be considered by you as such.
The rules of evidence do however, permit such testimony where such evidence relates to some other fact, where it relates to some other fact in issue here including motive, including intent, including absence of mistake, or accident, or some such other issue. Here the evidence was admitted as it may bear on the issue of whether the alleged touching of R.S. or K.S. was accidental or it was a mistake. Likewise, it might also bear on the defendant's motive for allegedly touching the victims here. This is to obtain some sort of sexual gratification, or on the issue of his intention to touch the children, victims here.
Now, whether such testimony does in fact bear on such an issue is for you to decide. Now, you may determine that the testimony does not bear on those issues, that is, it has no bearing or relationship at all to those issues. In this event, you may disregard the testimony as not being helpful to you at all, or *467 you may consider such evidence as bearing on one of those issues that I just referred to. That is for you to decide. But what you may not do, under the circumstances is consider such evidence as indicative of a general disposition to commit the crimes alleged here.
The trial court failed to give a similar instruction with respect to R.S.'s testimony concerning defendant's previous sexual assaults. This omission was erroneous. However, in light of the overwhelming evidence of guilt and the fact that a limiting instruction was given with respect to M.J.'s testimony, we do not find that the omission was prejudicial or requires a reversal of defendant's convictions. State v. Macon, 57 N.J. 325, 336 (1971). In the circumstances here, "the failure to give the instruction had no such real possibility for prejudice as to warrant a conclusion that, by reason thereof, the jury arrived at the wrong result." Hummel, supra, 132 N.J. Super. at 426. Cf. State v. Wilson, 158 N.J. Super. 1, 5 (App.Div. 1978), certif. den. 79 N.J. 473 (1978).

III.
The State concedes that defendant was mistakenly denied the proper jail credit. R. 3:21-8 provides:
The defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence.
Defendant was arrested on March 16, 1984 and remained in custody through the time of his sentencing on December 14, 1984. This period amounts to 274 days imprisonment, all of which should have been credited to defendant. However, the sentencing court was apparently misled by a presentence report and gave defendant credit for only 146 days served. Consequently, the matter is remanded to the sentencing court to amend the judgment of conviction and order of commitment to reflect the full 274 days jail credit to which defendant is entitled. With this exception, the judgment under review is affirmed in all respects. We do not retain jurisdiction.
NOTES
[1] In the copy of the records reviewed by us, the names of R.S.'s foster parents and the names of the referring witnesses have been deleted. We did not examine the original records which contained these names and which were delivered to the trial court for comparison. However, we emphasize that these deletions in no way hampered our review or understanding of the records.
[2] Defendant was found not guilty of aggravated sexual assault (Sixth Count), sexual assault (Seventh Count) and endangering the welfare of a child (Eighth Count) with respect to the complaining victim K.S.