944 A.2d 745 (2006)
399 N.J. Super. 444
STATE of New Jersey DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff
v.
J.C., Defendant.
In the Matter of T.J.C. and N.C., Minors.
Superior Court of New Jersey, Chancery Division, Bergen County, Family Part.
Decided March 3, 2006.
*746 Mary C. Zee, Deputy Attorney General, for plaintiff (Zulima Z. Farber, Attorney General, attorney).
Frank Paruolo, for defendant J.C.
Mary C. Verderame, Assistant Deputy Public Defender, Law Guardian oh behalf of minors T.J.C. and N.C. (Yvonne Smith Segars, Public Defender, attorney).
MARTINOTTI, J.S.C.
This opinion[1] addresses an issue frequently encountered in the Family Part when there are parallel DYFS and criminal proceedings. Specifically, the issue is whether an attorney retained by defendant[2] may represent defendant in both the protective services action initiated by DYFS against defendant on behalf of the children and in the criminal action initiated against her by the State. Here, DYFS seeks to enjoin the attorney retained by defendant from such dual representation. After a review of the briefs submitted, this court finds and determines that, as a matter of public policy, there is a valid reason to enjoin the selected attorney from representing defendant in both matters.
The following factual and procedural history form the conclusion. On January 4, 2006, DFYS received a referral from the five-six school in Hackensack alleging that T.J.C had a black eye, a bruise on her lips, and complained of pain in her ribs. The injuries were caused by the child's stepmother, J.C. The child, T.J.C., reported that J.C. had punched and kicked her two days prior. It is alleged that J.C. proceeded to throw T.J.C. to the ground, kicked her, and hit her. The child, T.J.C, was taken from school to the Hackensack Police Station, who also contacted DYFS.[3] *747 J.C. was arrested due to the allegations of beating T.J.C., and was subsequently charged with engendering the welfare of a child and assault.
On January 9, 2006, DFYS filed a verified complaint and order to show cause pursuant to N.J.S.A. 9:6-8.21(a)-(h), N.J.S.A. 30:4C-12, and R. 5:12-1(a)-(f), for removal and for the protection and best interests of the minor children, T.J.C. and N.C. The complaint alleges that while in the custody and care of defendant J.C. and M.C, the children's stepmother and father, T.J.C. and N.C. were abused and/or neglected in that the parents failed to exercise a minimum degree of care in providing the minor children, with proper supervision or guardianship by unreasonably inflicting harm and allowing the minors to be harmed or exposing them to substantial risk thereof, resulting in an impairment of the children's mental, physical and emotional condition.
The concern with a parallel DYFS and criminal case involves the amount of disclosure and access to DYFS files to which the attorney representing the defendant is entitled. N.J.S.A. 9:6-8.10a (a) states: "All records of child abuse reports . . . all information obtained by the Department of Human Services in investigating . . . and all reports of findings forwarded to the child abuse registry . . . shall be kept confidential and may be disclosed only under the circumstances expressly authorized under subsections b. . . ." Subsection b provides:
The department may and upon written request, shall release the records and reports referred to in subsection a . . . (6) A court . . . upon its finding that access to such records may be necessary for determination of an issue before it, and such records may be disclosed by the court . . . in whole or in part to the law guardian, attorney or other appropriate person upon a finding that such further disclosure is necessary for determination of an issue before the court. . . .
This strict confidentiality requirement is a procedural safeguard to protect victim children from unnecessary disclosure of his/her abuse which may cause the child further guilt, vulnerability or humiliation.
As the criminal attorney representing defendant, Mr. Paruolo would ordinarily be required to demonstrate that the information in the DYFS files is "necessary for determination of an issue before the [criminal] Court," before he may gain access to such. N.J.S.A. 9:6-8.10a (b)(6). This would involve filing a motion before the criminal court, followed by the court's in camera review of the sought information to determine the necessity of same as required for the determination of a relevant issue. The court would also determine whether the sought information could be accessed from a different source. See State v. Cusick, 219 N.J.Super 452, 463, 530 A.2d 806 (App.Div.1987), certif. denied, 109 N.J. 54, 532 A.2d 1118 (1987).
Rule. 5:12-3 contains a limited exception to the strict confidentiality requirement, providing that "[a]ll relevant reports of the DYFS and other reports of experts or other documents upon which DYFS intends to rely shall be provided to the Court and to counsel for all parties. . . ." without court order. As counsel for defendant in the DYFS matter, Mr. Paruolo would have complete access to entire DYFS files of the child. Thus, if Mr. Paruolo acts as counsel for defendant in *748 both the DYFS and criminal matters, he would get the benefit of accessing all the information contained in the DYFS reports without having to meet the strict requirements in N.J.S.A. 9:6-8.10a. This would circumvent the procedural and policy safeguards of protecting the victim child and ensuring the best interests of the child.
In Cusick, supra, 219 N.J.Super. at 455, 530 A.2d 806, the defendant appealed his conviction for committing sexual acts with a minor on the ground that his federal and state constitutional right to confront witnesses against him had been violated. Pertinently, the defendant contended that the trial court erred in denying him access to the minor's files maintained by the State and a non-correctional institution. Ibid. After reviewing the documents in camera, the trial court held that disclosure was not essential and that most, if not all, of the information could be obtained from other sources through, diligent investigation. Id. at 457, 530 A.2d 806. The Appellate Division affirmed the ruling. The court, quoting from Pennsylvania v. Ritchie, 480 U.S. 39, 60-61, 107 S.Ct. 989, 1003-04, 94 L.Ed.2d 40, 60 (1987), provided as follows:
To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt, and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth  like all other States  has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result.
[Cusick, supra, 219 N.J.Super. at 462, [530 A.2d 806] (emphasis added).]
Although, under the Sixth Amendment Confrontation Clause, every defendant has the right to cross-examination, Pennsylvania v. Ritchie, supra, 480 U.S. at 59-60, 107 S.Ct. at 999, 94 L.Ed.2d at 54, "[t]he Confrontation Clause only guarantees `an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Cusick, supra, 219 N.J.Super. at 462, 530 A.2d 806 (quoting Ritchie, supra, 480 U.S. at 53, 107 S.Ct. at 999, 94 L.Ed.2d at 55) (quoting Delaware v. Fensterer, 474 U.S. 15, 19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985)). In Ritchie, supra, 480 U.S. at 60, 107 S.Ct. at 1003, 94 L.Ed.2d at 59, the Supreme Court held that in order for a fair trial, CYS files were to be submitted only to the trial court for in camera review.
Although the principles articulated in Cusick, and Ritchie, are not directly on point, they are clearly analogous to the within matter. For Mr. Paruolo, as the *749 criminal defense attorney for defendant to have complete access to DYFS files by virtue of his representation of defendant in the DYFS matter, would completely flout the privacy and confidentiality expectations that Cusick, Ritchie, and N.J.S.A. 9:6-8.10a sought to protect. DYFS child abuse files often contain very sensitive information, including psychologist evaluations and diagnoses. Many individuals performing the evaluations, treatments, and the like are acting with the knowledge that their treatments or evaluations will be used for risk assessment and for therapeutic purposes only. If complete disclosure of these files to a criminal defense attorney were to be permitted, many persons including the victim herself or himself may be reluctant to participate in or even noncompliant with a process so essential to the underlying purposes of Title 9. Risk of harm to the child is very probable.
There is a common argument that the system has procedural safeguards in place to protect from unwarranted disclosure of information, i.e., the defense attorney has a duty to disclose any proposed evidence to the prosecutor, and the prosecutor has a right to object thereto and file a pre-trial motion to determine relevancy. However, this argument overlooks the intangible consequences of the defense attorney's having complete access to and familiarity with the DYFS files. In a criminal proceeding, the interests of the defendant and the alleged victim (child in this case) are adversarial. The role of the defense attorney is to zealously advocate on behalf of the defendant against the alleged allegations of child abuse. The defendant seeks to be found innocent. Part of the defendant's advocacy may involve the attorney's gathering information about the victim child in order to defend the defendant. The defense attorney's mere familiarity with the information in the DYFS files can be of a great mental advantage in helping him Or her strategically prepare for trial, determining what questions to ask of the witnesses and the victim, framing his or her opening and closing arguments, and making other tactical-decisions. The information in the DYFS files, fully available to the defense attorney, could be of a great advantage without involving discovery of any kind. The specific information may not be used, or may be excluded by the criminal judge. However, merely having that information offers criminal defense counsel an unfair advantage and would provide access to otherwise undiscoverable information.
It is well settled that the Sixth Amendment guarantees the defendant a right to counsel of her own choosing. See U.S. v. Bergamo, 154 F.2d 31 (3d Cir. 1946). The Sixth Amendment right to counsel is essential to a fair hearing; however, this right is not absolute. See U.S. v. Kikumura 947 F.2d 72 (3d Cir. 1991). "It is clear, however, that the Sixth Amendment, U.S. Const. amend. VI, protection accorded to the defendant's choice of counsel must be balanced against the requirements of the fair and proper administration of justice. . . ." Davis v. Stamler, 650 F.2d 477, 479-80 (3d Cir.1981). "Desirable as it is that a defendant obtain private counsel of his own choice, the goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice." United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1214 (3d Cir.1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).
The defendant is free to choose her own counsel. However, defendant's choice of counsel must be balanced against the public policies of effective administration of justice and the equitable public interest in protecting the victim child's records from *750 unnecessary disclosure. Allowing defendant to choose her own counsel in this context would have a chilling effect on the investigation into the DYFS matter and any treatment process and serve as a compelling justification for enjoining defendant's attorney, Mr. Paruolo, from representing defendant in both the criminal and DYFS matter. Any other result would be inequitable as N.J.S.A. 9:6-8.10a would be completely abrogated, leaving the victim child without the procedural safeguards that the Legislature intended when establishing such statute. The defendant is free to choose counsel, in the spirit of the Sixth Amendment, who will zealously advocate on her behalf, however, the dual representation by defendant's attorney in the within matter is analogous to stating that the Sixth Amendment gives defendant an absolute right to her choice of counsel, trumping all public policy and court interests.
In this matter, the court concludes that the child's right to privacy outweighs defendant's right to counsel of her choosing. DYFS's application is hereby granted.
NOTES
[1] The reader should note that this opinion was written before DYFS v. V.J. and R.J., 386 N.J.Super, 71, 898 A.2d 1059 (Ch.Div.2004) was decided, though approved for publication after DYFS v. V.J. and, R.J. was published. The court in DYFS v. V.J. and R.J., reached a different conclusion on the issue of dual representation.
[2] It is of importance to note that defendant is the children's stepmother.
[3] It should be noted that there is an extended history between the parents of the minor child, N.C., and M.C. and J.C., M.C.'s new wife, stemming back to 1994. The Hackensack Police Detective also indicated that he knew the family well and their last involvement with the police was as recent as August 2005.