# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1556-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.G.,

     Defendant-Appellant,

and

M.K.-G. and J.W.,

     Defendants.

_____

IN THE MATTER OF M.G.
and J.C.W.,

     Minors.

_____

Argued December 20, 2018 – Decided June 3, 2019

Before Judges Simonelli, Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FN-19-0024-16.

Jill Nanci Alintoff, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defendant, attorney; Jill Nanci Alintoff, on the briefs).

Sara M. Gregory, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason Wade Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, on the brief).

Olivia Belfatto Crisp, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Olivia Belfatto Crisp, on the brief).

PER CURIAM

Defendant K.G.[1] appeals from the May 23, 2017 order of the Family Part finding that he abused and neglected two children pursuant to N.J.S.A. 9:6-8.21(c)(3) and N.J.S.A. 9:6-8.21(c)(4). Because the trial court erred when denying K.G. his choice of counsel, we reverse and remand.

I.

The following facts are derived from the record. K.G. is married to and resided with M.K.-G. The couple has one son, M.G., who was less than a year

---

[1] We use initials to protect the anonymity of the children. R. 1:38-3(d)(11) and (12).

A-1556-17T2

old at the time of the alleged abuse. M.K.-G. has two other sons, D.J. and J.C.W., who are not biologically related to K.G. and were approximately eight and six years old, respectively, at the time of the alleged abuse. M.G. and J.C.W. resided with the couple. D.J. resided with his maternal grandmother, but frequently visited his mother at the family home.

In July 2015, D.J. spontaneously reported to his maternal grandmother that K.G. sexually abused him while he was visiting the family and while the infant M.G. was present in the home. After an investigation, on July 29, 2015, plaintiff Division of Child Protection and Permanency (DCPP) filed a complaint against defendant, M.K.-G., and J.W., the father of J.C.W., seeking care and custody of J.C.W. and M.G., the two children living in the family home. The Division alleged that K.G.'s sexual abuse of D.J. placed the children who lived with him at imminent harm and substantial risk in violation of N.J.S.A. 9:6-8.21(c)(4)(b) (the Title Nine proceeding). Because D.J. lived in New York, he was not alleged to be a subject of K.G.'s abuse and neglect, even though he was the victim of K.G.'s alleged sexual assault. After an initial hearing, the court

restrained K.G. from the family home, and any physical, telephonic, or electronic contact with J.C.W. or M.G. that was not supervised by DCPP.[2]

On September 30, 2015, K.G. was arrested and charged with the sexual assault of D.J., pursuant to N.J.S.A. 2C:14-2. K.G. thereafter retained Remi Spencer, Esq., to represent him in both the criminal proceeding and the Title Nine matter. He has consistently denied the allegations lodged against him.[3]

On January 13, 2016, the trial court sua sponte issued a letter to Spencer, which provided as follows:

> I am advised you are entering an appearance on behalf of [K.G.] on [sic] the above matter. Staff unilaterally researched Promise Gavel which exposed you are representing [K.G.] on the criminal matter arising out of the same allegations. That dual representation has been found to be inconsistent because Division proceedings are confidential and may not be used in criminal court. You must therefore make a choice whether you are representing [K.G.] in the criminal or Division matter, but not both.

DCPP later filed an objection to Spencer representing K.G. in both matters.

---

[2]  After the complaint was filed, J.C.W. disclosed that he was sexually abused by K.G. as well as by D.J. and several other boys. DCPP did not amend the complaint to include allegations of sexual abuse by K.G. against J.C.W.

[3]  K.G. has also stressed that a convicted sex offender, who was the grandmother's paramour, lived with D.J. and the grandmother for several years. In addition, the grandmother had an acrimonious relationship with K.G. and M.K.-G., once requiring police intervention during a verbal dispute.

On January 29, 2016, Spencer appeared before the trial court. Having just been served with DCPP's written objection, she requested time to respond in writing. The court granted Spencer's request. In doing so, the court stated its disinclination to permit K.G. to have the counsel of his choice in both matters:

> I'm the one who triggered the question in the first place. And although I will give you an opportunity to be heard, I'm inclined not to let you represent him in this matter. I think that the nature of the allegations against your client and what will have to transpire in this case, in terms of evaluations of the child and other things that will go on, are just inappropriate for you to have any access to if you're representing him in the criminal case.

The court also referred to our holding in N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593 (App. Div. 2010). In that case, we examined whether a defendant may be represented by the same counsel in both criminal and Title Nine proceedings involving the same alleged acts against a child. We held that simultaneous representation is permissible where the trial court is able to implement measures, such as protective orders and a prohibition on making copies of documents, sufficient to protect the confidentiality of Division records disclosed during the Title Nine proceeding. With respect to N.S., the trial court stated:

> Quite honestly, I don't understand Judge Lihotz's decision. I mean she talks about the protections that the court could put in place, and I quite honestly don't

5

understand how somebody in your position would be able to divorce yourself from what you're hearing in this case even if there's a protective order in place. And, again, because of the sensitive nature of this case, which is sexual allegations [sic] by your client against a child, I would really be loath to allow you to – to do that. But, again, I will allow you the opportunity to be heard[.]

On February 26, 2016, the trial court held a hearing to determine if K.G. would be permitted to have Spencer represent him in both proceedings. Spencer, relying on our holding in N.S., urged the court to allow her to represent defendant and take whatever measures it deemed necessary to protect the confidentiality of DCPP records disclosed during the Title Nine proceeding. Spencer acknowledged that she would be required to obtain court approval to use any confidential DCPP records in the criminal proceeding.

The court declined to undertake the analysis required by N.S. or consider any of the protective measures identified in the opinion. The court described N.S. as follows:

> Judge Lihotz offers a prohibition on photocopies as a remedy. Frankly, the [c]ourt doesn't understand how that accomplishes anything. The Appellate Division's decision is premised on the fact an attorney can create a . . . wall within the attorney's mind, which is what Ms. Spencer was also talking about. The fact that there are rules of professional conduct and other rules that would bar her from using things that she uses . . . . [S]he also said and I agree with her . . . we're all human beings and

6

when we hear, see or learn something you don't have the ability to just block it out and forget it. So, there may be some mechanisms in place to bar it from being used in the criminal court, but there is really no – not that division that Judge Lihotz seems to think we can have. I don't think that's the way the human mind or human nature works.

In addition, the court stated that "[t]hough the [c]ourt should follow Appellate Division reported cases, the case here . . . is differentiated" from N.S. because N.S. concerned the right to counsel in a "dispositional hearing" and K.G.'s right to select counsel arose in a "fact finding setting[.]" The court did not elaborate on its reasoning nor explain the significance of these two types of hearings on a defendant's right to choose counsel. The court also cited State v. Cusick, 219 N.J. Super. 452 (App. Div. 1987), which it described as arguably inconsistent with N.S., as a reason that N.S. was not binding. The court also found that our directive in N.S. to consider issuing a protective order was "not the issue here" because the source of the referral to DCPP was known to K.G.

The court did not allow K.G. to have Spencer represent him in both proceedings. The court expressed its decision as follows:

I'm denying your application, you're going to have to make a decision as to whether you're representing [K.G.] in the Division case or the criminal case. I can't block you from the criminal case, but I can block you from this case, so you're going to make a judgment.

7

Spencer immediately stated that she would represent K.G. in the criminal matter.[4] She also informed the court that K.G. could not afford to retain a second private attorney and would apply for appointed counsel for the Title Nine action.

On May 23, 2017, after trial at which K.G. was represented by appointed counsel, the court found K.G. sexually abused J.C.W., pursuant to N.J.S.A. 9:6-8.21(c)(3), and abused or neglected J.C.W. and M.G., pursuant to N.J.S.A. 9:6-8.21(c)(4), by placing them in imminent harm and at substantial risk as a result of his sexual abuse of both D.J. and J.C.W. The court amended the complaint to conform to DCPP's proofs that K.G. sexually abused J.C.W. The court denied DCPP's request to amend the complaint to conform to its proofs that K.G. sexually abused D.J. because DCPP specifically excluded that child from the complaint. This appeal followed.

K.G. challenges several evidentiary decisions of the trial court, as well as the sufficiency of the evidence supporting its findings. In addition, K.G. argues:

> K.G. WAS DEPRIVED OF HIS RIGHT TO CHOOSE
> HIS COUNSEL WHEN THE TRIAL COURT
> REFUSED TO ALLOW HIS RETAINED COUNSEL
> TO REPRESENT HIM IN BOTH THE TITLE NINE
> AND CRIMINAL MATTERS.

---

[4] The court assumes the election was made by K.G. prior to the hearing.

Because we conclude that the trial court erred when it denied K.G. his choice of counsel, warranting a new trial, we do not address K.G.'s other arguments.

II.

"Parents in New Jersey charged with civil abuse and neglect under Title Nine . . . have a constitutional right to counsel under the due process guarantees of Article I, paragraph 1 of the State Constitution, and a statutory right under N.J.S.A. 9:6-8.43(a) [and N.J.S.A.] 9:6-8.30(a)[.]"  N.J. Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 555 (App. Div. 2016).  As we noted in N.S., defendants in Title Nine matters often face parallel criminal proceedings arising from the same allegations of abuse.  412 N.J. Super. at 634-35.  The parallel proceedings "have resulted in thorny constitutional issues[,]" including whether a defendant has a right to be represented by the same counsel in both the Title Nine and criminal matters.  Id. at 635 (quoting Div. of Youth & Family Servs. v. R.M., 347 N.J. Super. 44, 64 (App. Div. 2001)).

The primary concern in such situations is the need to protect the statutory confidentiality of DCPP records.

> All records of child abuse reports . . . , all information obtained by the Department of Children and Families in investigating such reports . . . , and all reports of findings forwarded to the child abuse registry . . . shall be kept confidential and may be disclosed only under the circumstances expressly authorized . . . herein.

[N.J.S.A. 9:6-8.10a(a).]

The Title Nine proceedings will necessarily involve the disclosure to defendant's counsel of confidential DCPP records, including notes from the child victim's therapy sessions. See R. 5:12-3 (requiring the disclosure of "[a]ll relevant reports of [DCPP] and other reports of experts or other documents upon which the Division intends to rely" and requiring that the "Division's case file shall also be available for inspection to the attorneys for the parties without court order."). DCPP records may also be released for use in a criminal proceeding, but only by court order. See N.J.S.A. 9:6-8.10a(b)(6) and (12) (DCPP records relating to reports and investigations of child abuse are confidential but may be released where a court determines the information they contain is relevant and necessary for determination of an issue before the court).

> Two oft-cited justifications for securing this level of confidentiality are provided. First, the statute is designed as a "procedural safeguard to protect victim children from unnecessary disclosure . . . which may cause the child further guilt, vulnerability or humiliation." [Div. of Youth & Family Servs. v. J.C., 399 N.J. Super. 444, 447 (App. Div. 2006).] "DYFS child abuse files often contain very sensitive information, including psychologist evaluations and diagnoses. Many individuals performing the evaluations [and] treatments . . . are acting with the knowledge that their treatments or evaluations will be used for risk assessment and for therapeutic purposes only." Id. at 449-50.

> Second, there is a need to protect those who come forward to report child abuse and neglect, which are often difficult to detect. In fact, the statute grants immunity to persons who make such reports in good faith. N.J.S.A. 9:6-8.13.
>
> [N.S., 412 N.J. Super. at 636 (second alternation in original) (citations omitted).]

It is, therefore, inappropriate to provide "unfettered access to the Division's file outside the parameters of the Title Nine litigation, even for purposes of criminal defense[.]" Id. at 639.

We have held, however, that the "wholesale rejection of all . . . requests" to disclose such information to counsel in a Title Nine matter who will appear in a parallel criminal proceeding is also improper. Ibid. We instead concluded that concerns about the confidentiality of DCPP records should be addressed by the court reviewing dual representation requests by considering various available measures to "safeguard the goals of the State to uncover and treat abuse and neglect, and to protect victim children, without unnecessarily sacrificing a parent's right to exercise a desired choice of legal counsel." Id. at 640. As we explained,

> after balancing the competing concerns posed, the court may allow dual representation subject to a protective order, which preserves the confidentiality of the source prompting the Division's protective services litigation. In this way, the State's interest in eliminating any

> chilling effect on disclosure of abuse and neglect is protected by assuring the anonymity of those individuals and agencies who report abuse. So too, necessary orders would be entered when the need to safeguard a child victim and preserve the confidentiality of the victim-child's records is more compelling than the parent's right to employ a desired choice of legal representative. See Cusick, 219 N.J. Super. at 462. Additionally, a prohibition on providing photocopies of various records to parent-defendants could be effectuated.
>
> [Ibid.]

The balancing of "these competing concerns" is to be made by the trial court "on a case-by-case basis." Ibid.

Having carefully reviewed K.G.'s arguments in light of the record and applicable legal principles, we conclude that the trial court erred in denying K.G. his choice of counsel without considering whether it could have taken steps to preserve the confidentiality of the DCPP records likely to be disclosed during the Title Nine proceeding.

Our holding in N.S. was unequivocal: trial courts may not summarily reject a defendant's request to have the same counsel represent him in parallel Title Nine and criminal proceedings arising from the same alleged abuse of a child. The court instead must weigh the competing demands of protecting the confidentiality of DCPP records and the defendant's right to counsel of his

12

choice. In this instance, the trial court failed to follow N.S. Instead, after expressing its reservations about the wisdom and utility of our holding, the court barred defendant from having the counsel of his choice in the Title Nine proceeding without having undertaken the analysis required by N.S.

"It is beyond dispute that a trial judge has the responsibility to comply with pronouncements of an appellate court." Triffin v. Automatic Data Processing, Inc., 411 N.J. Super. 292, 306 (App. Div. 2010) (quoting Tomaino v. Burman, 364 N.J. Super. 224, 233 (App. Div. 2003)). "Trial judges are privileged to disagree with the pronouncements of appellate courts; the privilege does not extend to non-compliance." Jersey City Redevelopment Agency v. Mack Props. Co. No. 3, 280 N.J. Super. 553, 562 (App. Div. 1995) (quoting Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415 (1961)).

The trial court also erred when it concluded it was not bound by the holding in N.S. because that case concerned choice of counsel for a dispositional hearing while the question of counsel in the present matter arose prior to a fact finding hearing. The defendant in N.S. first made a request for counsel in her criminal proceeding to represent her at a Title Nine fact finding hearing. 412 N.J. Super. at 641. Because the request was procedurally defective, the court did not consider its merits at that time. A renewed request was made at the

13

dispositional hearing after the fact finding was complete, at which time the request was denied.  Id. at 633.  While this procedural difference between N.S. and the present case exists, there is nothing in our holding in N.S. suggesting that it is inapplicable in the context of a fact finding hearing.

Nor is the procedural distinction meaningful.  "[S]ignificant and longstanding implications attach to a finding of abuse and neglect."  Id. at 619. "[A]n adverse determination could affect parents' 'constitutionally protected right to maintain a relationship with their children.'"  Ibid. (quoting Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009)).

> [I]n addition to these custodial ramifications, numerous collateral consequences flow from such a finding. Specifically, a finding of abuse and neglect is forwarded by [DCPP] to a central registry maintained by the Department of Children and Families[.]  On written request, the records may be released to individuals identified in the statute, "including doctors, courts, child welfare agencies, and any person or entity mandated by statute to consider child abuse or neglect information when conducting a background check or employment-related screening of an individual . . . seeking employment with an agency or organization providing services to children[.]"
>
> [Id. at 619-20 (third alteration in original) (citations omitted) (quoting G.S. v. Dept. of Human Servs., 157 N.J. 161, 169 n.2 (1999)).]

Given the significant consequences of an adverse determination at a fact finding hearing, K.G.'s interest in selecting counsel of his choice was in no way less significant than it would have been had the question of his choice of counsel arose at a dispositional hearing.[5]

Nor do we agree with the trial court's conclusion that our holding in Cusick conflicts with N.S. In Cusick, a defendant convicted of several criminal charges related to the sexual abuse of a child argued on direct appeal that he was denied his Sixth Amendment right to confront witnesses against him because he was denied access to confidential records of the Division of Youth and Family Services, the predecessor to DCPP. 219 N.J. Super. at 455. The judge presiding at Cusick's criminal trial reviewed the records and determined that their disclosure was not necessary to resolve any issue before the court and the information they contained could be obtained from other sources. Id. at 457. The court concluded that the Sixth Amendment interest in confrontation of witnesses was outweighed by the State's interest in protecting the confidentiality

---

[5] "[T]he statutory framework of Title Nine provides that upon a finding of abuse and neglect, the offending parent or guardian is entitled to a dispositional hearing to determine whether the children may safely return to his or her custody, and if not, what the proper disposition should be." G.M., 198 N.J. at 387-88.

of the documents. Id. at 459. We affirmed, finding that the trial court's balancing of interests was appropriate. Ibid.

The holding in Cusick in no way conflicts without our holding in N.S. We acknowledged in N.S. that the fact that an attorney may receive confidential records during the Title Nine proceeding does not mean that those records would automatically be available in the parallel criminal proceeding. 412 N.J. Super. at 640 ("[A]ny authorization of criminal counsel to undertake representation in Title Nine litigation would be subject to the strictures of N.J.S.A. 9:6-8.10a(a)."). In fact, in N.S. we cited Cusick as standing for the proposition that orders to "safeguard a child victim and preserve the confidentiality of the victim-child's records" in the criminal proceeding may be necessary when that need "is more compelling than the parent's right to employ a desired choice of legal representative." Ibid. (citing Cusick, 219 N.J. Super. at 462).

The "erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error." United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006) (quoting Sullivan v. Louisiana, 508 U.S. 275, 282 (1993)); see also State v. Kates, 216 N.J. 393, 395-96 (2014) (finding that "deprivation of the right to counsel of choice is a 'structural error,' so defendants

who demonstrate that their right has been violated do not have to show prejudice[.]" (quoting State v. Kates, 426 N.J. Super. 32, 44 (App. Div. 2012))). The erroneous denial of K.G.'s right to counsel of his choice without applying the holding in N.S. is sufficient to warrant reversal of the findings of abuse and neglect against him. We leave to the trial court on remand to determine whether developments, if any, in the criminal proceedings against K.G. affect the necessity for a new trial on the Title Nine allegations and, if a new trial is held, whether K.G.'s request to have the same counsel represent him in both the Title Nine and criminal matters can be honored by implementing measures necessary to preserve the confidentiality of DCPP's records.

Reversed and remanded for further proceedings consistent with this opinion. Because the trial judge has heard this matter and may have a commitment to his findings, we direct that on remand the case be assigned to a different judge. See Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 617 (1986); Graziano v. Grant, 326 N.J. Super. 328, 349-50 (App. Div. 1998). All limitations on K.G.'s contact with the children established by the trial court are to remain in place until further order of the trial court. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                                                    A-1556-17T2